See note to this case in 28 N. W. Rep. 372.— REP.

BRADLEY, Respondent, vs. CRAMER and others, Appellants.

*April 13 — May 15, 1886.*

LIBEL: DAMAGES. *(1) Refusal to retract: Evidence of malice. (2) Malice of person giving information on which publication was based. (3) Prospective damages. (4) Instructions to cure error in admitting evidence.*

1. Mere hesitancy or a refusal on the part of the publisher of a libel to publish a retraction thereof after being advised of the error, is not evidence of actual malice in the original publication.

2. If the publication of a libel in a newspaper was in good faith and without actual malice, the publisher cannot be held responsible for the hatred or malice of a person not in his employ, from whom

the reporter who wrote the libelous article obtained his information.

3. Damages for prospective suffering cannot be recovered in an action for a libel.

4. An error in admitting evidence as to matters not proper to be considered in assessing damages, is not cured by merely instructing the jury that they cannot award damages on account of such matters, without withdrawing the evidence from the jury.

APPEAL from the Circuit Court for *Rock* County.

The case is thus stated by Mr. Justice CASSODAY:

" Libel.    The article was held to be actionable *per se*, and the complaint sufficient on demurrer, for which see 59 Wis. 309.    The answer, in effect, admitted the publication of the article, January 4, 1882, and that it was false in so far as it concerned or referred to the plaintiff; but denied that it was maliciously published, or that a certain portion of it was capable of the meaning ascribed to it.    The answer also alleged, in justification and mitigation, several facts, among which were that a reporter on the Evening Wisconsin, the paper of the defendants, hearing of the suicide of the plaintiff's husband, December 25, 1881, investigated the same, and thereupon was informed of the facts stated in the article from those whom he believed to be reliable persons, and wrote and published the same as an item of news for said paper, in good faith and without the knowledge of any of the defendants, believing it to be true, and without any malice or bad motive, and that neither he, nor any of the defendants, had at the time become acquainted with, or heard of, the plaintiff or her said husband; that August 2, 1882, the defendants voluntarily published in all the editions of their said paper a retraction of the article.

" Upon the trial, the jury returned a special verdict to the effect (1) that said retraction was not published within a reasonable time after the defendants had knowledge that the libelous article had appeared in their paper, in view of all the facts and circumstances disclosed on the trial by the

evidence; (2) that the words in the libel, in regard to the plaintiff's son receiving a salary and being sent to school, taken in connection with other parts of the article, meant that the plaintiff had fraudulently taken from the Wheeler & Wilson Sewing Machine Company wages for her son that he had not earned; (3) that none of the defendants were actuated by any actual ill will, hostility, bad motive, or malicious feeling against the plaintiff in publishing the article in question; (4) that the damages sustained by the plaintiff 'to her character and reputation, including mental pain, anxiety, and distress, we assess at $5,000;' (5) that the defendants had published the retraction for the purpose of repairing the wrong as far as possible; (6) that 'we find for the plaintiff, and assess her damages at the sum of $5,000.' From the judgment entered upon the verdict, the defendants appeal."

For the appellants there was a brief by *Finches, Lynde & Miller*, attorneys, and a separate brief, in reply to that of the respondent, by *Wm. Ruger*, of counsel; and the cause was argued orally by *Mr. Geo. P. Miller* and *Mr. Ruger*.

*J. V. Quarles*, for the respondent.

CASSODAY, J. The charge to the jury was very lengthy. Numerous exceptions were taken to it. It is said to have dwelt upon matters not in issue and upon facts which were wholly for the jury, in a sensational manner. Complaints are made as to the distinctions drawn between slander and libel, and their effects; the description, definition, nature, construction, and value of character; the intrinsic worth of good character to the individual himself, when compared with great riches or silver and gold; and the reading to the jury an extract from the opinion on the former appeal, commenting upon the meaning of the article as a matter of fact, in explanation of the decision. These things and others are said to have misled and prejudiced the jury, and

thereby augmented the damages. The view we have taken of the case renders it unnecessary to consider whether any of such portions of the charge involve error. An opportunity for elegant discourse is always tempting to genius and ability. But while some circumstances invite, others repel, the indulgence. To be apt, the expression must not only be accurate, but appropriate. A strict adherence to the case in hand is one of the highest qualities of juridical discussion. Such discussion is necessarily concise, direct, and restricted, rather than ornate. It is, moreover, cold logical, pointed, and without superfluity.

The general verdict assessed the plaintiff's damages at $5,000, and in answer to the fourth question the jury assessed her compensatory damages at the same amount. It is said that, under the directions given to the jury, they were authorized to, and undoubtedly did, include punitive damages. This is denied by counsel for the plaintiff. The jury were told that, "when a libelous article has reached the columns of a newspaper without the knowledge or approval of the proprietors, seriously reflecting on the character of an individual, and such proprietors, as soon as knowledge comes to them of its publication, make a full and complete retraction, while they would be held responsible for all actual damages caused by its publication, although done without their knowledge, such *retraction* would go and *should be considered* in mitigation of anything in the nature of *punitive damages.* But should such publishers *unreasonably delay* such retraction, *or attempt* in any way *to pervert its meaning, or substitute one calumny for another*, such conduct would at least tend to *aggravate the offense.* Or if, when fully advised of the error, they should *hesitate* or *refuse* to correct it, the case might rise into one of *premeditated wrong*, and become a fit and proper one *for exemplary damages.*" In another place, after defining compensatory damages and what they included, the charge continued: "While

other damages are known and called exemplary, punitive, punitory, and sometimes vindictive. These last-named damages are only given when the conduct and acts of the defendants in the premises have been governed and controlled by hatred, malice, or ill will towards the plaintiff. Such malice is called express malice, and in such cases the jury may award exemplary damages to the plaintiff in addition to his compensatory, by way of punishment to the defendant, and to deter others in like cases from offending." The two classes of damages are then illustrated in a variety of ways, when the court added: "And in this connection, I will say that the wealth of the defendants, or any or either of them, is entirely immaterial in this case, *unless* from the evidence, *under the instructions, you find they are liable for exemplary damages.*" In connection with submitting the special verdict to the jury, they were told: "Then there is a general verdict for the plaintiff. If you find for the plaintiff under the instructions of the court, the form of your verdict will be: 'We find for the plaintiff, and assess her damages at the sum of —— dollars;' that is, such sum as you agree upon." In submitting the fourth question, which we are told only covered compensatory damages, the jury were directed: "Here you will put the amount of damages, *which will be the same as in the general verdict,* if you should find for the plaintiff. If you should find no damages, you could so state. If you find that she has sustained damages, you will state the amount, *whatever you find the damages to be* from the evidence, *under the instructions,* which she has suffered *and will hereafter suffer.*"

It is very clear from the quotations made that the jury were authorized to include punitory damages in the general verdict; and that, under the directions given, they were bound to state the same amount in answering the fourth question as they did, regardless of the wording of that question. There was no opportunity given to the jury to find

two different amounts of damages, one compensatory and the other punitive. *Eviston v. Cramer*, 57 Wis. 581. Of course, the evidence as to the wealth of the defendants, and some other evidence, was inadmissible, except upon the theory that the jury were authorized to include punitive damages.

But it is claimed that it appears from the special verdict found that punitory damages were excluded by the jury in finding (3) that none of the defendants were actuated by any actual ill will, hostility, bad motive, or malicious feeling against the plaintiff in publishing the article. That finding simply negatived the plaintiff's right to punitive damages. *Eviston v. Cramer*, 57 Wis. 570. Upon the trial, counsel for the plaintiff virtually consented that that question should be answered as it was. Even had a contrary answer been given to that question, yet, under the directions of the court, the jury would have been obliged to state the same amount in answer to the fourth question as they assessed for damages in the general verdict.

But, in answer to the first question submitted, the jury in effect found that the publication of the retraction was unreasonably delayed. In a portion of the charge quoted the jury were told, in effect, that while a prompt publication of the "retraction would go and should be considered in mitigation of . . . punitive damages," yet that an unreasonable delay in the publication "would at least tend to aggravate the offense;" that is, tend to show actual malice, and hence to increase such punitive damages. And, again, they were told in effect that any hesitancy or refusal to correct when fully advised of the error, might be evidence of premeditated wrong, and make the case thus become a fit and proper one for exemplary damages. We are not prepared to hold that such mere hesitancy or refusal was evidence of premeditated wrong. Subsequent affirmative acts and publications might be such as tended to prove

Bradley vs. Cramer and others.

actual malice or ill will in the original publication, but mere silence would not.   The delay in publishing the retraction could only weaken its effect in mitigating punitive damages in a case where the evidence would justify such damages.

There seems to have been no evidence in the case to justify the statement to the jury, in a portion of the charge quoted, to the effect that should such publishers " attempt in any way to pervert " the meaning of the alleged libel, "·or substitute one calumny for another, such conduct would at least tend to aggravate the offense."

The reporter writing the article in question got his information, or most of it, from a Mr. Beach, who was never a servant of the defendants, nor in their employment.  Nevertheless, the court charged the jury, in effect, that the defendants might be held " accountable or responsible for the hatred, malice, or ill will of Mr. Beach," if he was actuated by any, and they were " satisfied from the evidence that the defendants knowingly ratified " his conduct.   If the article was innocently published by the defendants, as they testified, then it is difficult to perceive how they could ratify the act of a stranger who had inadvertently or otherwise given false information to their reporter, except by a republication, with full knowledge of the facts, of which there is no pretense.  But even in that case, the actual malice would not be imputed to the defendants by way of ratifying the acts of the stranger, but by their own act of republication knowing the article to be false.

In the portion of the charge quoted, respecting compensatory damages, the jury were told, in effect, to allow the plaintiff, not only for the damages which she had already suffered, but also such as she might *thereafter suffer*.   This may well have increased the damages, especially in view of the following instruction as to the nature and effect of libel when compared with slander: " But the printed charges may pass from hand to hand indefinitely, and for many

years. It is an ever-continuous defamation, so long as that by means of which it is communicated remains in existence." Here the trial occurred some three or four years after the publication of the libel. We are not aware of any case authorizing a jury to include subsequent suffering in such a case. It is unlike the case of permanent physical injury.

The jury were instructed, in effect, that they could not award any damages to compensate the plaintiff for nervous prostration, illness, or injury to health which might have been caused by the publication, nor for injury to her feelings in so far as such injury to her feelings was due to the nature of her marital relations with her deceased husband, or to the suicide of her husband, or the circumstances attending such suicide. Assuming such instructions to have been correct, then it was error to admit, against objections, evidence of the matters thus excluded; and the mere giving of the instructions, without withdrawing the evidence from the jury, would not wholly cure the errors.

The article published was actionable *per se*. Presumptively it was false so far as it concerned the plaintiff. So much of it as related to her the defendants expressly admitted to be false. The plaintiff was entitled to substantial damages, without any proof of actual damages. Odgers, Sland. & Lib. 543. No special damage was pleaded, and of course none could be proved. *Ibid.* The only injury alleged in the complaint by means of the publication was that the "plaintiff was injured in her reputation, to her damage." It is to be remembered that the only compensatory damages which the plaintiff could recover were such as she sustained by reason of the publication. As a new trial will necessarily make a new record, it is unnecessary to say more.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.