AUSTIN, Respondent, v. ST. LOUIS TRANSIT COM-
PANY, Appellant.

**St. Louis Court of Appeals, November 14, 1905.**

1. **PERSONAL INJURIES: Release: Fraud: Waiver of Tender.**
In an action for damages on account of personal injuries, where
the defense was a release of the plaintiff's claim, and the
plaintiff in reply alleged fraud in procuring the release, the
plaintiff's attorney offered to refund to the defendant's attor-
ney the sum of money paid plaintiff for the release and was
told by defendant's attorney that it was no use, that the de-
fendant would not accept the money; *Held,* this was sufficient
to show that a technical tender was waived.

2. ———: ———: ———: **Instructions.** In such case an instruc-
tion authorizing the jury to disregard the release if it was
obtained by fraud is set out in full and held to correctly de-
clare the law.

3. ———: ———: **Incomplete Instruction.** And in such case an
instruction which authorized a verdict for plaintiff, if the jury
should find the defendant negligent, was erroneous for failure
to include the question of release for their consideration; but
the omission was cured where other instructions properly sub-
mitted that question to the jury's consideration.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse
A. McDonald,* Judge.

AFFIRMED.

*Sears Lehmann* with *George W. Easley* for appel-
lant; *Boyle & Priest* of counsel.

The evidence of plaintiff showed that no proper
tender was made to defendant of the money received by
her as consideration for the release. Before suing on
a rescinded, fraudulent contract a tender of the consid-
eration must be made to the party from whom it was

received. Alexander v. Railroad, 54 Mo. App. 70; Winter v. Railroad, 160 Mo. 189; Retzer v. Packing Co., 58 Mo. App. 270; Smith v. Kander, 85 Mo. App. 33; Vandervellen v. Railroad, 61 Fed. 58; Gould v. Cayuga Bank, 86 N. Y. 75; Jewett v. Morton, 44 Mo. 276; Lockwood v. Railroad, 65 Mo. 233; Melton v. Smith, 65 Mo. 324; Estes v. Reynolds, 75 Mo. 563; Och v. Railroad, 130 Mo. 27; Carson v. Smith, 133 Mo. 606; Taylor v. Short, 107 Mo. 384; Schultz v. Christman, 6 Mo. App. 342; Cohn v. Reed, 18 Mo. App. 115; White v. Sewing Machine Co., 27 Mo. App. 474; Keen v. Engine Co., 34 Mo. App. 485; Poe v. Stockton, 39 Mo. App. 550; Shoe Co. v. Bank, 59 Mo. App. 662; Banking Co. v. Insurance Co., 75 Mo. App. 316.

*J. Hugo Grimm* for respondent.

(1) There was a proper and legal tender of the ten dollars to defendant before the suit was brought, and if it was necessary to keep the tender good this was done in plaintiff's instructions to the jury directing that the defendant be given credit for the ten dollars if a verdict should be found for plaintiff. Bertrand v. St. Louis Transit Co., 108 Mo. App. 70. But it is not the law that a tender by plaintiff was a condition precedent to recovery. McCarty v. T. C. Co., 21 Texas Civil App. 568; Lumley v. Railroad, 6 Am. and Eng. Railroad Cases (N. S.) 82; Goodson v. National Masonic Accident Ass'n, 91 Mo. App. 352; 24 Am. and Eng. Ency. of Law (2 Ed.), pp. 314-315. (2) The claim agent clearly misrepresented to plaintiff the character of the paper she was signing, telling her that it was a mere receipt for money given as charity, whereas in fact by its terms it was a release of all her claims against the defendant. 24 Am. and Eng. Ency. of Law (2 Ed.), pp. 314-315; Courtney v. Blackwell, 150 Mo. 245; Blair v. Railroad, 89 Mo. 383; Bliss v. Railroad, 160 Mass. 443.

STATEMENT.—On October 5, 1901, plaintiff was a passenger on one of defendant's summer cars traveling on Jefferson avenue, in the city of St. Louis. Her destination was the intersection of Mills street and Jefferson avenue. In response to a signal the car was stopped at the Mills street crossing. The car was an open one with running-boards along its sides. Plaintiff was accompanied by her granddaughter, a child about twelve years of age. When the car stopped, plaintiff took her grandchild by the hand, assisted her to alight, and then attempted to get off. Before she succeeded in reaching the ground, and while she had hold of a post or upright of the car, with one foot on the ground and the other on the running-board, in response to a signal given by the conductor, the car was started forward. The motion of the car caused plaintiff to fall upon the running-board and in this position she was carried or dragged a considerable distance, wrenching or straining her back and bruising her side and hip; for these injuries she recovered a judgment for $262.50, from which defendant duly appealed.

The answer, in addition to a general denial, pleaded a written release by plaintiff of her claim for damages caused by the accident.

The reply admitted the execution of the release but alleged that it was obtained by imposition and fraud; that the defendant's claim agent, who procured plaintiff's signature to the release, represented to plaintiff that the money paid her (ten dollars) was given to her as a charity, and that the paper she signed was only a receipt to be presented to the defendant to show that the money had been paid. The reply alleged that plaintiff could neither read nor write and that the instrument was not read to her; that she signed it with no knowledge of its contents, believing it to be simply a receipt, and with no knowledge that it was a release, and would not have signed it had she known that it was a release.

The release was read in evidence. On its face it is

Austin v. St. Louis Transit Co.

a full acquittance of defendant of all plaintiff's claims for damages caused by the injury. The evidence in respect to what took place between plaintiff and defendant's claim agent, and in regard to how plaintiff's signature was obtained to the release is more than conflicting; it is diametrically opposed. Plaintiff's testimony in substance is, that the claim agent called two or three times within a few days after the injury and while she was in bed suffering pain, and told her he was authorized by the company to pay her five dollars, and as she was poor and in need he would pay her five dollars out of his own pocket and make it ten dollars; that he produced a paper, telling her it was a receipt, and she sat up in bed and signed it, believing it was nothing more than a receipt for ten dollars. Plaintiff testified that she could neither read nor write and that the paper was not read to her but was handed to her for her signature and she traced her name to it, having learned to trace her name though she could neither read nor write. Plaintiff further testified that the agent wanted a witness to the paper and she had Mrs. Waddell, who resided in the same house, called down and she signed the paper as a witness. Mrs. Waddell testified that she signed the paper as a witness but did not read it, and it was not read to her or to the plaintiff while she was in the plaintiff's room. The defendant's claim agent testified that he called to see plaintiff on October ninth and took up the matter of settlement with her. Plaintiff said she had rather see some of her friends before she made a settlement and asked him to call the next day. He called on the morning of the tenth and again took the matter up with her. Witness further testified as follows:

"She had stated the afternoon before that she didn't want to get in a lawsuit, as she had had a number of years' experience in the courts. I don't know the nature of her case, didn't inquire into it, but she said she simply would like to settle it if we could agree upon the amount. I never at any time intimated to her, or had such a

thought as giving her any of my money as any inducement whatever. . . . I told her I would have to have a witness. She said there was a colored lady upstairs, a Mrs. Waddell, and she called her herself, the hall door being open. Mrs. Waddell came down. She took one of the releases and I took the other one; I read it over carefully, word for word, while Mrs. Waddell followed me. The light wasn't very good and Mrs. Austin suggested that she step over by the window, which she proceeded to do, and when I had finished reading it Mrs. Waddell said: 'That settles it, Mrs. Austin, you will never get anything more out of the company.' I says, 'Mrs. Austin, you now understand the contents of these papers,' and she said she did, and then she signed the papers and Mrs. Waddell witnessed them and so did I."

BLAND, P. J. (after stating the facts).—An instruction in the nature of a demurrer to the evidence was offered and refused. Plaintiff made out a clear case entitling her to recover. The defense relied on was the release and the failure to tender back the ten dollars paid. In respect to the tender, the evidence is that pending a former suit on the same cause of action, plaintiff's attorney went to the office of the attorney of record for the defendant in the former suit and offered to pay him the ten dollars and stated to the attorney that if he would not accept the tender he would go to the general office of the defendant and make it there. The defendant's attorney replied that there was "no use to do that" as the defendant would not accept the money. We think this evidence is sufficient to show that a technical tender of the ten dollars was waived by the defendant. In regard to the release, the plaintiff's evidence tends to show that it was obtained by the false representations of defendant's claim agent and that she signed it believing it to be simply a receipt and nothing more. If this evidence is to be believed, then the so-called re-

lease constituted no bar to the suit. The question as to whether or not it was fairly obtained was, under all the evidence, for the jury and not for the court, and the court properly denied the defendant's demurrer to the evidence.

The defendant assigns as error the giving of the following instruction for plaintiff:

"3. The court instructs the jury that if they find and believe from the evidence that the plaintiff is an ignorant and illiterate woman and that within a few days after her injury defendant's claim agent called on her and repeated his visits to her during the succeeding week, and induced her to accept from him the sum of ten dollars by representing to her that the defendant could not be compelled by law to pay her anything, but that it had authorized him to give her five dollars as a gratuity and that he himself would add five dollars to that amount, and desired her to sign a receipt so that he could show defendant that he had paid out this money, and if you believe that when the plaintiff signed said release she did not understand its contents or character and thought it was a receipt and not a release of her rights, and that its nature was misrepresented (as above stated) to her by defendant's agent, then said release is invalid and constituted no defense to this suit."

This instruction authorized the jury to find for the plaintiff if they found that defendant's claim agent made false representations to plaintiff, representations which he knew to be false, and that the representations were believed to be true by plaintiff and were relied on by her, and we can see no objection to it or just ground for its criticism.

The first instruction given for plaintiff reads as follows:

"1. The jury are instructed that it was the duty of those in charge of the car operated by defendant company, when signaled to stop for the discharge of passengers to stop a reasonably sufficient length of time to

allow passengers to get off the car in safety; and if the jury believe from the evidence that some one for plaintiff rang the bell of the car on which she was riding to stop the same for her to alight, and thereupon said car was stopped on Mills street, at a regular stopping place in pursuance of said signal, and that while it was so stopped the plaintiff undertook to alight from said car and while in the act of so doing, the servants of defendant in charge of said car negligently and carelessly started the same, and thereby threw her to the ground and injured her, then your verdict must be for the plaintiff, provided you further find that in so attempting to alight from said car the plaintiff exercised ordinary care on her own part."

It is contended that this instruction is erroneous for the reason it predicates a state of facts which, if found by the jury, authorized them to find for the plaintiff, leaving out of view the defense of the release. The instruction is bad. One instruction or a series of instructions asked by the plaintiff, covering the entire case, should submit for consideration by the jury points raised by evidence of his adversary. [Clark v. Hammerle, 27 Mo. 55; Mead v. Brotherton, 30 Mo. 201; State v. McKinzie, 102 Mo. 620, 15 S. W. 149; Griffith v. Conway, 45 Mo. App. 574; Lesser v. Railway, 85 Mo. App. 326; Galbreath v. Carnes, 91 Mo. App. 512.] But where the omission is cured by other instructions plainly and intelligently submitting the omitted evidence to the jury and directing the result that should be reached if such evidence is found to be true, the error would be corrected. [Gordon v. Burris, 153 Mo. 223, 54 S. W. 546; Perrette v. Kansas City, 162 Mo. 238, 62 S. W. 448; Orscheln v. Scott, 79 Mo. App. 534; Lemser v. M'fg. Co., 70 Mo. App. 209; Larson v. Mining Co., 71 Mo. App. 512.]

Concerning the release, the court gave the following instructions for defendant:

"The jury are instructed that the mere fact that the plaintiff, at the time she signed the release in question here, believed her injuries were not so serious as they

really were (if they so find from the facts), is of itself no ground for setting aside said release.

"3. The jury are instructed that if defendant and its agents and plaintiff, both believed her injuries were less than they really were, at the time the release in question here was signed, if they so find the facts, this furnishes, of itself, no ground for setting aside said release.

"4. The jury are instructed that the amount of the consideration for said release; that is, the amount of money paid to plaintiff, furnishes, of itself, no ground for setting aside said release.

"5. If the jury believe that the plaintiff carelessly signed the release in question here, handed to her by a man she knew to be a claim agent of defendant company, without taking any care to ascertain its contents, and that in doing this she was not doing as an ordinarily prudent person would do under the same circumstances, then the plaintiff is bound by the release, and is not entitled to recover.

"6. If the jury believe from the evidence that the plaintiff, at the time she signed the release in question here, knew that it was a release of her claim, then your verdict must be for the defendant, whatever you may believe as to the other facts in this case.

"7. The jury cannot presume that the signature of the plaintiff to the release in question here was obtained by fraud, but on the contrary, when a person of sound mind signs a paper it is presumed that she does so with knowledge of the contents thereof. And in this connection the jury are instructed that the fact, if they so find it, that the plaintiff signed the release here without reading it, or having it read to her is not proof of fraud, unless the defendant's agent made some misrepresentation or did something to induce her to sign it. And even if defendant's agent did make some misrepresentation as to the contents of said release, or did induce her to sign it without reading it, this will not entitle her to

recover, if under all the facts the jury believe she knew what she was signing, at the time she signed the release."

With all this direction in their possession it cannot be even imagined that the issue in respect to the release was ignored by the jury.

Discovering no reversible error in the record, the judgment is affirmed. All concur.