## NELLIE B. REDING, Respondent, v. JOHN B. REDING, Appellant.

**Springfield Court of Appeals, May 2, 1910.**

1. **SLANDER: Damages: Sufficiency of Evidence.** In a suit for slander, the evidence was examined and held sufficient to justify submitting the case to the jury upon the questions of both actual and exemplary damages.

2. **INSTRUCTIONS: Slander: Ignoring Defense.** In an action for slander where one of the defenses is the truth of the words spoken, and evidence was offered in support thereof, an instruction which tells the jury that the law presumes that the words, if spoken, were spoken falsely and maliciously, but which entirely ignores the defense of the truth of the words, was held error. This same instruction might be proper in a case where the only answer was a general denial.

3. ———: **Ignoring Defense: Cured by Other Instructions.** The courts in this State have gone to great length in holding that though an instruction given in behalf of plaintiff ignores the defense, yet if in behalf of the defendant an instruction is given fairly submitting the question omitted, the error is cured.

4. ———: **Slander: Presumption as to Good Character.** In an action for slander, evidence was introduced by both parties on the question of plaintiff's character for virtue. *Held*, that under the evidence it was error to instruct that the law presumes the reputation and character of a woman for chastity and virtue to be good and it devolves upon the defendant to overcome that presumption, etc. This holding was under the rule that presumptions have no place in the presence of actual facts disclosed to the jury.

5. **SLANDER: Damages: Separation of Husband and Wife.** In an action for damages for slander, the question of whether the right of plaintiff to recover any damages by reason of her husband leaving her should be submitted to or excluded from the jury by proper instruction depends upon whether or not the evidence tends to show that the slander had that effect. Evidence in this case examined, in connection with the opening statement of plaintiff's counsel; *held*, that it was error to refuse an instruction excluding this element of damages.

6. ———: ———: **Mental Anguish: Future Suffering.** In an action for slander the length of time between the speaking of

the slandering words complained of and the trial should be given great weight in determining whether or not the plaintiff is entitled to have submitted to the jury the question of future mental anguish and humiliation.

7. **EVIDENCE: Witnesses: Impeaching Own Witness.** A witness was called by the defendant but did not give any evidence on his behalf. The plaintiff thereupon cross-examined him on matters tending to make plaintiff's case and afterwards impeached him by showing contradictory statements. *Held*, that he became the witness of the plaintiff as to these matters, and that it was error for the court to permit plaintiff to impeach him.

8. ————: ————: **Cross-Examination.** It is the rule in this State that if a witness has been called by a party and gives any testimony, no matter how formal or unimportant, the other side has the right to examine him on the whole case, and does not thereby make him his witness.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*Clay & Davis* and *Benton & Ruark* for appellant.

(1) Instruction No. 1 is erroneous in that it directs the jury that the law presumes the falsity of defendant's statement; and instructions 6 and 10 are subject to the same objection. Ham v. Barret, 28 Mo. 388; Erhart v. Dietrich, 118 Mo. 426; Sackberger v. Grand Lodge, 73 Mo. App. 38; Winter v. Lodge of K. P., 96 Mo. App. 1; Lynch v. Railroad, 112 Mo. 433; Moberly v. Railroad, 98 Mo. 183; Burkholder v. Henderson, 78 Mo. App. 295; Haycraft v. Grigsby, 88 Mo. App. 354; Brownlow v. Woolard, 61 Mo. App. 124; Bragg v. Railroad, 192 Mo. 354; Adams v. Machine Co., 110 Mo. App. 367; Weller v. Railroad, 120 Mo. 635; Payne v. Railroad, 129 Mo. 405; Morton v. Heidorn, 135 Mo. 616; Schefers v. Railroad, 126 Mo. 665; Myers v. Kansas City, 108 Mo. 480; Clark v. Hammerle, 27 Mo. 55. (2) Instruction No. 1 is also erroneous in that it excludes the de-

fense of the truth of the words spoken. It directs the jury to find for the plaintiff if defendant spoke the words charged, a matter that was undisputed. Rudd v. Fire Ins. Co., 120 Mo. App. 1; Stewart v. Andes, 110 Mo. App. 243; Carder v. Primm, 60 Mo. App. 423; Hohstadt v. Daggs, 50 Mo. App. 240; Land & Lumber Co. v. Moss, 87 Mo. App. 167; Kelley v. Railroad, 105 Mo. App. 365; Toncrey v. Railroad, 129 Mo. App. 596; Percell v. Railroad, 126 Mo. App. 43; Boothe v. Loy, 83 Mo. App. 601; State v. Lentz, 184 Mo. 223. (3) It was error for the court to permit the plaintiff to impeach the witness, W. E. Tanner, by proving a variant statement not referred to in his examination in chief and only brought out in cross-examination. As to such new matter the plaintiff made the witness her own. Anderson v. Railroad, 161 Mo. 411; State ex rel. v. Branch, 151 Mo. 622; Ayers v. Railroad, 190 Mo. 228; Hubner v. Railroad, 79 N. Y. Supp. 153, 69 N. E. 1124; U. S. Brewing Co. v. Ruddy, 67 N. E. 799; Sitler v. Greeg, 90 N. Y. 686; Williams v. Culver, 39 Ore. 337, 64 Pac. 763; Welch v. State, 39 Tex. 413, 46 S. W. 812; Bailey v. Railway, 32 Wash. 640, 73 Pac. 679. (4) Instruction No. 8 is erroneous in allowing plaintiff to recover for probable future mental suffering. Halley v. Light Co., 115 Mo. App. 652; Wilkerson v. Street Railway, 126 Mo. App. 617; O'Keefe v. Railroad, 124 Mo. App. 625; Halstead v. Nelson, 24 Hun 395; Bradley v. Cramer, 66 Wis. 297, 28 N. W. 372.

*T. M. Saxton, George Hubbert* and *O. L. Cravens* for respondent.

(1) It is undoubtedly true that the words are in themselves actionable. That they are presumed to be false is too well settled in this State to overturn that doctrine in libel and slander suits. Nicholson v. Rogers, 129 Mo. 136; Israel v. Israel, 109 Mo. App. 371; Brown v. Wintsch, 110 Mo. App. 264; Broughton v. McGrew,

39 Fed. 672; Klein v. Laudman, 29 Mo. 259; Wadding-
ham v. Waddingham, 21 Mo. App. 609; Kennedy v. Hol-
liday, 25 Mo. App. 503; Fitzgerald v. Barker, 85 Mo.
1; Yager v. Bruce, 116 Mo. App. 487; Lewis v. McDan-
iel, 82 Mo. 577; Casey v. Aubuchan, 25 Mo. App. 91;
Clements v. Maloney, 55 Mo. 352; Baldwin v. Fries,
46 Mo. App. 288; Buckley v. Knapp, 48 Mo. 161.  (2)
Actual damages are presumed to have resulted from
the publication of a charge which is actionable *per se.*
Rammell v. Otis, 60 Mo. 365; Price v. Whitely, 50 Mo.
439; Hudson v. Garner, 22 Mo. 423; Buckley v. Knapp,
48 Mo. 152; Noeninger v. Vogt, 88 Mo. 590.  (3) Con-
sidered as a whole the charge was not unfair to the de-
fendant, and that the charge must be considered as a
whole and not by piecemeal is well settled in this State.
No other practice, we submit, would be fair to either
the trial courts or the litigants.  Carpenter v. Hamil-
ton, 185 Mo. 617; Mintner v. Bradstreet, 174 Mo. 444;
Lewis v. Humphries, 64 Mo. App. 466; Liese v. Meyer,
143 Mo. 560; Cornovski v. Transit Co., 207 Mo. 263;
Railroad v. Stewart, 201 Mo. 499; Flaherty v. Transit
Co., 207 Mo. 318; Chambers v. Chester, 172 Mo. 461;
Mitchell v. Bradstreet, 116 Mo. 247; Burdoin v. Trenton,
116 Mo. 358; Anderson v. Union Ter. Co., 161 Mo. 411;
Bell v. Railway, 125 Mo. App. 660; Lange v. Railway,
208 Mo. 478.  (4)  The rule here has been at all times,
with one or two exceptions, that where a party puts a
witness on the stand and examines him only on trivial
matters in chief, he may be cross-examined on the whole
case.  State v. Soper, 148 Mo. 217; Page v. Kankey, 6
Mo. 433; Brown v. Burrus, 8 Mo. 26; Railroad v. Silver,
56 Mo. 265; Jones v. Roberts, 37 Mo. App. 163.  (5)
The only objection made against instruction No. 8 is
that it permits recovery for future mental suffering.
This seems not well taken.  Nicholson v. Rogers, 129
Mo. 136; Baldwin v. Bulware, 79 Mo. App. 5; Michael
v. Matheis, 77 Mo. App. 556; 25 Cyc. 533; 18 A. and E.
Ency. of Law (2 Ed.), 1083; Graybill v. DeYoung, 73

Pac. (Cal.) 1067; Farrand v. Aldrich, 48 N. W. (Mich.)'
628; Boldt v. Budwig, 28 N. W. 280.

GRAY, J.—This cause is here on appeal by the defendant from a judgment of the circuit court of Newton county, in favor of the plaintiff in the sum of two thousand dollars, the result of the verdict of a jury in favor of the plaintiff for one thousand dollars actual, and one thousand dollars punitive damages.

The defendant is the father-in-law of plaintiff, and this action was brought against him by her for slanderously calling her a "damned whore."

The plaintiff pleads "that by reason of said slander, she has suffered and will continue to suffer pain and anguish, and was thereby greatly damaged in her good name and repute, and thereby deprived of the comfort, aid, society, support, love and assistance of her husband, who is the son of the defendant."

The answer, in addition to a general denial, pleads the truth of the words; that they were uttered while plaintiff was prosecuting defendant's son for seduction; that while he was assisting in the defense of his son in said prosecution he was informed, orally and by affidavits of divers persons, that they had seen plaintiff in the act of sexual intercourse with other persons, and that defendant believed these statements to be true. It appears from the testimony that the defendant repeatedly charged the plaintiff as alleged in the petition.

The plaintiff resided in Newton county, and is the daughter of a blacksmith. Dixon Reding is the son of the defendant. The testimony in behalf of plaintiff shows that from the time plaintiff and Dixon were school children, they were great friends, and he was the only sweetheart she ever had; that they were engaged to be married, and that he seduced her under his said promise of marriage, and a child was born to her as the result of the seduction. Young Reding refused to keep his promise to marry plaintiff, and she had him arrested

on the charge of seduction. When the case was called for trial, he entered a plea of guilty, and received a sentence of five years in the penitentiary. Some arrangement was made between the families by which a parol was granted to young Reding, with the understanding that a marriage was to take place between him and plaintiff. It seems that sometime after this agreement was entered into, and after he had married plaintiff, a full pardon was obtained for him from the Governor, and he then refused to longer live with the plaintiff and abandoned her.

The defendant was very much opposed to the marriage, and declared that he was through with his son when he learned that he had married plaintiff.

During the time the prosecution was pending, and while the defendant was assisting in the defense of his son, he repeatedly charged against plaintiff the words mentioned in the petition.

Without going into the testimony in detail, it may be said that the plantiff introduced abundant testimony to sustain the allegations of her petition, and she also introduced many witnesses to prove that her reputation for virtue and chastity was good in the neighborhood in which she lived, and that nothing had ever been heard against her character except the disgrace growing out of her affair with the defendant's son. It may further be said that after Dixon had entered a plea of guilty, the defendant continued to charge that the plaintiff was a whore.

In behalf of the defendant, witnesses were offered to prove the truth of the charge made against plaintiff by the defendant. We have carefully examined this testimony, and cannot say the jury was not justified in refusing to believe it. The plaintiff lived in the neighborhood from the time she was a young school girl until the time of the trial, so that practically all her life had been spent in that immediate neighborhood, and a large number of disinterested citizens who lived near her,

testified that her reputation for virtue and chastity was good.

The testimony of the defendant's witnesses presented to the jury a story very much out of the ordinary. From the time she was fourteen years of age, until about the time she had young Reding arrested, witnesses told of seeing her in the act of sexual intercourse with different persons. It seemed to be there was no effort made to keep the matter a secret, and that on the school ground at recess, when the other pupils were playing about, and in the open fields when they were gathering strawberries, and at other times when persons were in plain sight, these things occurred. They may have occurred in the manner detailed by the witnesses, but as we have said, it is not strange the jury did not believe them.

The defendant admitted that he sent his wife to secure an affidavit from a young girl to the effect that she had seen the plaintiff and another boy in the act of sexual intercourse on the schoolhouse ground. The wife of defendant and his son took the girl to Joplin where she appeared before a notary public and it is claimed made the affidavit. This affidavit was seen and read by the defendant during the time his son was being prosecuted on the seduction charge, and the same was also read to the jury at the trial in this case. The girl was called as a witness and she testified that she did not make the affidavit, and had not seen any such conduct between the plaintiff as was stated in the affidavit signed by her. Her version was that she did go to the notary public and that something was written and read to her which she signed, but she did not know the matter contained in the affidavit was in there at the time she signed it.

Another witness gave testimony of similar import concerning an affidavit made by him. This witness, however, claimed that he was taken to Joplin and when drunk, made the affidavit.

We have stated enough of the testimony to show that under the same the allegations of the plaintiff's petition were proven sufficiently to carry her case to the jury, and that the jury was authorized to find against the plaintiff, not only for actual, but for exemplary damages.

In behalf of the plaintiff, the court gave to the jury the following instructions:

"You are instructed that if you believe and find from the evidence that defendant spoke of and concerning the plaintiff the words "she is nothing but a damned whore, and he (defendant) could prove it, 'she is a whore,' or enough of those words to express such accusations in the presence and hearing of one or more persons, then under the law said words are actionable and slanderous in themselves, and presumed, without any further proof of their falsity or malice of defendant, to have been spoken if they were spoken, falsely and maliciously, and you will find the issues in favor of plaintiff for compensatory or actual damages.

"And in this connection you are further instructed that a whore is defined to be a woman who practices unlawful sexual intercourse with men. And even if you should find and believe from the evidence that plaintiff submitted herself to the embraces of Dixon Reding under promise of marriage and a child thereby was born to her prior to her marriage, if she married, yet the court instructs you that such conduct, if true, on her part did not and does not constitute her a whore."

It is insisted by the defendant that this instruction is erroneous, in that it tells the jury that the law presumes the falsity of defendant's statements, and excludes the defense of justification and the evidence offered in support thereof.

It must be admitted that the instruction standing alone is erroneous. We are reminded by the respondent that the instruction is substantially the same as those given in Nicholson v. Rogers, 129 Mo. 136, 31 S. W. 260,

and Israel v. Israel, 109 Mo. App. 371, 84 S. W. 453. This is true, but in those cases the answers were general denials, hence an issue as to whether the words were spoken maliciously or not, was not raised, and under such circumstances, we think the court should have given effect to the presumption to be indulged in in such cases by assuming that the words, if spoken at all, were spoken maliciously. [Below v. Fuller, 84 Texas 450, 19 S. W. 616, 31 Am. St. Rep. 75; Mayo v. Goldman, 122 S. W. 449.] But in this case the defendant did not rely on his general denial, but alleged the truth of the words and offered evidence in support thereof.

By reference to the first paragraph of the instruction, it will be seen that the court plainly told the jury that if the defendant spoke the words charged in the petition, to find a verdict in favor of the plaintiff. This instruction entirely ignored the defense, and was erroneous. [Penney v. Stock Yards Co., 212 Mo. l. c. 329, 111 S. W. 79.]

Unless the error of the court in giving said instruction was cured by other instructions given, the judgment must be reversed.

In behalf of the defendant, the court gave the following instructions upon this point:

"C. The jury are instructed that, although one may publish or speak of another defamatory and malicious statements, yet the truth of the statements made forms a complete defense to any action for damages for such publication, and even though the jury believe from the evidence that the defendant spoke of and concerning the plaintiff the words charged, yet if they further believe from the evidence that the matter so spoken was true, then the defense has been complete, and in that case it is immaterial whether the defendant was actuated by malice towards the plaintiff and you must find for the defendant.

"B. The court instructs the jury that if they believe from the evidence that the plaintiff, at the time of

the speaking of the alleged defamatory words, had had illicit sexual relations with any person other than her husband, Dixon Reding, then the verdict must be for the defendant."

The courts of this State have gone to great length in holding that though an instruction given in behalf of plaintiff ignores the defense, yet if in behalf of the defendant an instruction is given fairly submitting the queston omitted, the error is cured. [Lange v. Mo. Pac. R. R. Co., 208 Mo. l. c. 478, 106 S. W. 660; Austin v. St. Louis Transit Co., 115 Mo. App. 146, 91 S. W. 450; Turner v. Snyder, 139 Mo. App. 656, 123 S. W. 1050; Asbill v. City of Joplin, 124 S. W. 22.] The two last cases above cited were decided by this court at its last term.

The second paragraph of the instruction given in behalf of plantiff qualifies in a measure the first paragraph and shows that it was not the intention of the court to give the instruction the full meaning which its language imports. If the court intended that if the jury found that the defendant spoke the words charged in the petition, then the verdict should be for the plaintiff, the second paragraph of the instruction has no place in the case. The two instructions given in behalf of the defendant were favorable indeed, to him. This is especially true of instructions No. B.

If the above were all the instructions given upon the point in controversy, and the case was free from other substantial errors, we might hesitate to reverse the judgment, but in addition to the above, the court, at the request of plaintiff, gave the following instructions:

"2. And in this connection you are instructed that malice does not consist alone in personal spite or ill will, but exists in law whenever a wrongful act is intentionally done without just cause or excuse; and the motive or purpose of defendant in speaking the words charged, if he did speak them, can only be considered by you as affecting the punitive or exemplary damages

claimed, and not as bearing on the actual damages, if any, she may be entitled to.

3. The jury are further instructed that even though you should find and believe from the evidence that the defendant believed that the alleged slander was true, if you find it was uttered by him, yet this fact, if true, does not constitute any justification for the utterance of such words, if he did utter them."

These instructions also entirely ignore the defense, and are just such instructions as should be given in cases where the answer is a general denial. Instead of submitting to the jury the truth of the charge made by defendant against plaintiff, the court submits the question alone, as to whether he used the words charged in the petition, and wholly ignores his defense that they were true.

In behalf of respondent the court gave the following instructions:

"6. The law presumes the reputation and character of a woman for chastity and virtue to be good, and it devolves upon the defendant to overcome that presumption and to prove by the greater weight of credible testimony the truth of such utterances, as the defendant justifies by charging the truth thereof."

The correctness of this instruction is challenged, and it is claimed that under the issues in this case, the jury should not have been told that the law presumes the reputation and character of plaintiff to be good. The decisions are not harmonious.

In Sackberger v. Grand Lodge, 73 Mo. App. 38, the suit was on an insurance policy. The defense was that the deceased committed suicide, and there was evidence supporting the theory of suicide. At the request of plaintiff, the court gave the following instruction: "The court instructs the jury that the presumption of law is against suicide, and in this case the burden of proof is on the defendant to establish by a preponderance of the evidence the fact that the deceased committed suicide."

The verdict was in favor of the plaintiff, and the court granted a new trial because of the giving of that instruction. The plaintiff appealed, and the judgment was affirmed. Judge BOND, delivering the opinion of the court said: "The action of the trial court was clearly correct in awarding a new trial for inadvertence on its part in instructing the jury as to a disputable presumption of law in the face of substantial testimony bearing on the issue. The principle of law excluding presumptions arising from the absence of any evidence when substantial evidence is adduced is not confined to actions for negligence. It rests upon the broad reason applicable to all cases that presumptions as to facts or events arising from the absence of all evidence, cannot be rationally indulged when the reason on which they are founded has been caused to cease by the introduction of evidence throwing light on the occurrences and explanatory of their causes."

In Schepers v. Union Depot R. Co., 126 Mo. 670, the court said: "It may be said in the first place that reversible error was committed in an instruction given plaintiff on the question of contributory negligence. By this instruction the jury was told 'that the law presumes every man to have been using due care for his own safety, and that presumption is not overthrown by the mere fact of his being injured.' There was evidence before the jury tending to prove contributory negligence. Every circumstance from which the death resulted was before the jury, and it was for them to determine therefrom whether the negligence of the deceased was a contributing cause. Such an instruction has been disapproved in several recent cases."

In Brown v. Knapp & Co., 213 Mo. 655, 112 S. W. 474, the action was for libel. The answer admitted the publication, but denied making the same with malice and sought to justify upon the ground of privilege. The publication charged the plaintiff with a commission of a felony and was libelous *per se*. The court quoted ap-

provingly from McIntyre v. Bransford, 17 S. W. 359, as follows: "The falsity of defamatory words is presumed, because the law will not presume misconduct in a person. If libelous *per se,* malice is also presumed; and if defendant pleads their truth, he must prove it, or, in the absence of any other defense, respond in damages."

In Buckley v. Knapp, 48 Mo. 152, an action similar to this, and in which the issues were the same, the court gave an instruction as to presumptions of law, and the same was approved by the Supreme Court. It may be said, however, that the question was not raised in that case.

In Mockowik v. Railroad, 196 Mo. l. c. 571, 94 S. W. 256, it is said that "Presumptions have no place in the presence of actual facts disclosed to the jury, is held in many cases. [Rene v. Railroad, 180 Mo. l. c. 483; Bragg v. Railroad, 192 Mo. 331.] To give place to presumptions, on the facts of this case, is but to play with shadows and reject substance."

In Schepers v. Union Depot R. Co. and Mockowik v. R. R., supra, the plaintiffs were on the witness stand and testified to their conduct at the times in question, and therefore, all their acts from which it was to be determined whether they were exercising ordinary care or not, were detailed before the jury, and there was no reason for the court to tell the jury that the law presumed they were exercising ordinary care, as whatever care they did exercise, the jury had been acquainted of by their detailed statements.

Enough has been said to show that the decisions are not harmonious and the courts of appeals must remain in doubt upon the question until the Supreme Court has adopted a rule for their guidance. The case of Sackberger v. Grand Lodge, supra, however, is squarely in point, and we will be compelled to reverse and remand this cause for the matters complained of in instruction No. 6, or certify the cause to the Supreme Court as being in conflict with the opinion in that case.

In an instruction on the measure of damages, the court told the jury they might take into consideration evidence of mental distress, humiliation and anguish if any, which plaintiff would probably thereafter suffer. Appellant claims the court should not have submitted to the jury the question of future damages.

In Bradley v. Cramer, 66 Wis. 297, 28 N. W. 372, the court held the giving of such an instruction error, but the trial was some three years after the publication of the libel, and that point was especially considered by the court in deciding the point.

In Boldt v. Budwig, 28 N. W. 280, it is held that such damages are recoverable. We are of the opinion that the length of time between the speaking of the words complained of and the trial should be given great weight in determining this question, and as we will reverse the judgment and remand the cause, another trial will not take place until such time has elapsed that the court should not include this element as a measure of damages.

One W. E. Tanner was called by defendant to give evidence in his behalf. He was asked whether he had seen the plaintiff in the act of illicit intercourse with one Childress, and he denied the same. He gave no testimony in behalf of the defendant. On cross-examination, it was shown that he was one of the parties who had made affidavits as to acts of sexual intercourse by plaintiff, and on cross-examination he denied any knowledge of such improper conduct, and stated if he made an affidavit to that effect, he was drunk at the time. On his cross-examination he was also asked if he had not stated to persons that the defendant had offered to pay him money to come back from Colorado to testify in the Dixon Reding case. This he denied, and plaintiff was permitted, over the objection of the defendant, to contradict the witness and prove that he had made such statements. Inasmuch as the witness had given no testimony in behalf of the defendant,

and the plaintiff examined him concerning the affidavits, he became the witness of the plaintiff as to these matters, and it was error for the court to permit the plaintiff to impeach him. [Anderson v. The Union Terminal Co., 161 Mo. 1. c. 420, 61 S. W. 874; Ayres v. The Railroad, 190 Mo. 228, 88 S. W. 608.]

We recognize the rule in this State that if a witness has been called by a party and gives any testimony, no matter how formal or unimportant, the other side has the right to cross-examine him on the whole case, and does not thereby make him his witness. [Harris v. The Railroad, 115 Mo. App. 527, 91 S. W. 1010; Laws of 1905, page 307; McCune v. Goodwillie, 204 Mo. 1. c. 332, 102 S. W. 997.] But in this case, as we have stated, the witness gave no testimony in behalf of the defendant, and plaintiff saw fit to use him for the purpose of proving that the defendant had procured him to make a false affidavit, and also that he had been offered money by the defendant to testify in the criminal case. He denied that the defendant had offered him money, and then plaintiff sought to prove by others that he had so stated, and we simply hold that under these circumstances, the plaintiff was not entitled to impeach the witness, as the legal effect of that impeachment was only to destroy the testimony he had given in behalf of the plaintiff, and this was not the purpose of plaintiff in offering the testimony but it was offered for the purpose of trying to establish the fact that the defendant had tried to corrupt the witness.

The appellant requested the court to give the following instruction: "The court instructs the jury that the plaintiff is not entitled in this action to recover any damages by reason of any separation that may have taken place between herself and husband."

The request was refused and such refusal is assigned as error. The petition is sufficient to authorize

the recovery of such damages, and if there is evidence in the record upon which to base the same, the court committed no error. The suit is not for alienating the affections, but for slander. It will not be presumed that the husband left the wife because some one maliciously slandered her. In this case the husband procured many of the affidavits upon which the defendant justified his charge, and in addition thereto knew much more about the plaintiff than his father did; he had been prosecuted for seducing her under promise of marriage, and knew if the charge made by his father was true, he had committed no offense. With all of this knowledge, he voluntarily entered a plea of guilty, and at that time about all the slanderous words used by defendant had been uttered. Notwithstanding this, he married the plaintiff, and it cannot be said he would have done as if he believed his father's charge concerning her to be true. There is no evidence in the case that the son ever heard his father use the words charged previous to the separation.

This element of damages is not included in the instruction given in behalf of plaintiff, but in the opening statement, counsel for the plaintiff charged that the separation was due to the defendant's conduct in slandering plaintiff. This statement was permitted to stand over the objection and exception of the defendant, and evidence was offered of the fact that plaintiff and her husband were not living together. In view of this condition, the defendant was entitled to an instruction plainly telling the jury that it was not proper to consider that fact in establishing the plaintiff's damages and the refusal of this instruction was substantial error against the defendant, as we cannot tell what part of the one thousand dollars actual damages awarded plaintiff is due to this improper element.

The premises considered, we will reverse the judgment and remand the cause for a new trial, and on such new trial the plaintiff's instruction should be modified

so as not to ignore the defense of the truth of the words spoken, but inasmuch as the words are actionable *per se,* the plaintiff will be entitled to an instruction telling the jury that the law presumes that the words were falsely and maliciously spoken, and that the burden of proving the truth of the words spoken is upon the defendant, and instead of giving the plaintiff's instruction No. 6 in its present form, the same should be modified so as to omit the part thereof relating to the presumption of chastity, and the jury told that the burden of proving that plaintiff's reputation for chastity was not good, is upon the defendant. The instruction on the measure of damages should be modified so as not to include future damages, and unless the plaintiff offers additional evidence on the point in defendant's refused instruction No. H, said instruction should be given. All concur.