Richard E. WEISBACH and Valerie Weisbach, Respondents,

v.

Karen J. VARGAS, Appellant.

No. WD 33750.

Missouri Court of Appeals,
Western District.

Aug. 16, 1983.

Gregory M. Perlstein, Kansas City, for appellant.

Allan R. Browne and Lester E. Adams, Kansas City, for respondents.

Before WASSERSTROM, P.J., and KENNEDY and NUGENT, JJ.

KENNEDY, Judge.

Defendant appeals from judgments for husband and wife, Richard and Valerie Weisbach, for personal injuries and loss of consortium growing out of an automobile collision between a car driven by defendant Karen J. Vargas and a van driven by plaintiff Richard Weisbach in which his wife Valerie Weisbach was riding as a passenger.

We find no prejudicial error and we affirm the judgment, except as to the judgment for Richard for loss of his wife's services, which we reverse.

The facts of the case are as follows:

Richard and his wife Valerie, late at night, were in a street in Kansas City, Missouri, intending to make a left-hand turn into the parking lot of a convenience store. Their van was struck from the rear by the vehicle driven by defendant Vargas. Richard and Valerie were both injured, and this suit followed.

Richard was awarded $7,500 for his personal injuries and $750 for loss of his wife's services. Valerie was awarded $2,500 for

her own injuries and $750 for the loss of her husband's services.

Other facts will appear in connection with the various allegations of error.

## I

Defendant first says that the court erred in refusing to give a withdrawal instruction offered by defendant. The refused withdrawal instruction reads as follows: "The issue of plaintiff, Richard Weisbach's claim for lost wages from Ford Motor Company from the date of the accident to the present date is withdrawn from the case and you [are] not to consider such evidence in arriving at your verdict."

The trial developments which prompted defendant's offering the withdrawal instruction, were as follows: Richard testified that he was off his employment as an assembly-line worker at Ford Motor Company for a period of 15 months, and lost wages in the amount of $25,275. He testified that at the time of the accident he had been off work on medical leave for a period of four or five months on account of his diabetic condition, but that by the time of the accident he felt "pretty good," that his medical leave was up on the following Monday after the accident and that he intended to report back on that following Monday. It developed on cross-examination, however, that the medical leave expired a month later, rather than the following Monday, and that the reason he did not return to his employment at Ford was his diabetic condition and his inability to work around gas fumes. There was no connection between the injuries received in the accident and his inability to return to his former job, and there was no loss of Ford wages which could be traced to the injuries received in the accident.

Appellant calls our attention to the Committee's General Comment to Withdrawal Instructions, MAI 34.01 (1981 3d ed.), which describes the office of the withdrawal instruction as follows:

A withdrawal instruction is only to be given when during the course of the trial a false issue, improper evidence, or evi-

dence of an abandoned issue has been injected. The purpose of a withdrawal instruction may be served by the court sustaining a motion to strike and admonishing the jury to disregard the evidence. However, in certain instances, the trial court may determine that such action is inadequate, inappropriate or untimely and that a written instruction is necessary.

The court may properly give a withdrawal instruction when it has received evidence upon an issue which is later abandoned either by choice or by reason of inadequate proof for final submission to the jury. The instruction to be given is that the issue is no longer open for the jury's consideration.

The withdrawal instruction, then, is to avoid misleading and confusion on the part of the jury, because of some spurious issue raised by the testimony. *Estes v. Desnoyers Shoe Co.,* 155 Mo. 577, 56 S.W. 316, 319 (1900). The giving of such a withdrawal instruction is left to the discretion of the trial court. In several cases cited by the defendant for her position, the appellate court has simply determined that the giving of a withdrawal instruction, complained of by the appellant, was discretionary with the trial court, and there was no abuse of that discretion. *Temple v. Atchison, Topeka and Santa Fe Railway Co.,* 417 S.W.2d 97, 99 (Mo.1967); *Roberts v. Emerson Electric Manufacturing Co.,* 362 S.W.2d 579, 582 (Mo.1962); *Schmid v. Langenberg,* 526 S.W.2d 940, 943 (Mo.App.1975). Defendant cites other cases in which the court's refusal to give a requested withdrawal instruction has been held to be reversible error. They are *Womack v. Crescent Metal Products, Inc.,* 539 S.W.2d 481, 484 (Mo.App.1976); *DeMoulin v. Kissir,* 446 S.W.2d 162, 166 (Mo.App.1969); *Reding v. Reding,* 143 Mo. App. 659, 127 S.W. 936, 941 (1910). Without discussing each of those cases and their respective differences from the one before us, we will simply say that in each such case the appellant had presented some spurious issue with a lay jury, uninstructed as to its

legal effect, might consider to have significance.

■ The trial court in the present case apparently believed that Richard's cross-examination testimony had "straightened out" the false or misleading testimony given on direct examination, and that there was no reasonable likelihood that the jury would be in any way confused or misled by his direct examination testimony about the loss of Ford wages. Defendant's attorney in argument reminded the jury of Mr. Weisbach's admissions that the wages lost from the Ford employment were not related to the accident injuries. Indeed it is clear from the jury's verdict—awarding Richard $7,500 damages for his personal injuries—that they did not consider the lost Ford wages as resulting from the injuries sustained in the accident.

We hold that the court's refusal of the withdrawal instruction was not an abuse of discretion, and was not reversible error.

II

■ Next the defendant argues that the court erred "In Allowing Comments and Evidence Regarding Defendant's Municipal Arrest Following the Accident..."

In his opening statement, plaintiff's counsel said: "and the police took this lady down to the police station and gave her a breathalyzer—"

The court denied defendant's request for a mistrial but sustained the objection and instructed the jury "to disregard the last statement of counsel."

During the presentation of plaintiff's case, the police officer who investigated the accident was testifying to his observations of defendant Vargas's behavior and appearance after the accident, the effect of which was that she was to some extent under the influence of alcohol, so that her ability to drive was slightly impaired. Defendant Vargas objected to his testimony that these observations were made at the police station, and now says that this testimony was erroneously admitted and prejudicial.

There was no evidence how she got to the police station, whether she was arrested, whether she came voluntarily, whether any charges were filed or, if so, what was their disposition. In fact, the police officer, in describing Mrs. Vargas' general appearance, explained: "Normally, when I make those observations, I do that at the station.... I do that where I can see." "It was dark out." There was no evidence of any arrest, any municipal charges, or of any action against Mrs. Vargas.

We are unable to say that the testimony that Mrs. Vargas was at the police station when the police officer made his observations of her appearance was prejudicial to her, and we decline to hold the court was in error in admitting the evidence.

III

■ Next defendant complains of the admission of testimony of plaintiff Richard Weisbach's preexisting diabetic condition. Apparently defendant's idea is that proof of his preexisting diabetic condition aroused sympathy in the jurors' hearts and inclined them to be generous with Mr. Weisbach, for she cites us to *Lewis v. Hubert*, 532 S.W.2d 860, 866–867 (Mo.App.1975), where it is written that evidence that a party has children, or evidence of his financial condition, is inadmissible unless it bears upon an issue in the case. The theory of the rule presumably is that the jury's minds may be ruled by a soft-headed sentimentality rather than a dispassionate, scientific assessment of the evidence and the instructions, and so they must be guarded from any evidence which might generate sympathy.

Defendant cites us to no case where the admission of evidence of a plaintiff's preexisting diseases and infirmities has been held to be excludable in a personal injuries case. Ordinarily the defendant considers it to be in his interest to prove preexisting infirmities and diseases, to show that the plaintiff's present condition is attributable in whole or in part to such preexisting condition, and not to the accident under investigation.

Defendant Vargas filed a motion in limine asking the trial court to prohibit mention by plaintiffs in their case of Richard's preexisting diabetic condition. The motion in limine was overruled. When the Weisbachs' counsel mentioned the subject of the diabetes in his opening statement, counsel for defendant objected. The court overruled the objection.

Richard's diabetic condition was mentioned from time to time by various witnesses throughout the trial—by the physician who treated him for the injuries sustained in the motor vehicle accident; by Richard himself; and by Valerie. There was no evidence connecting the diabetes with the automobile accident in any way, nor any contention at trial or here that the accident caused or aggravated the diabetes.

It may be, as the defendant argues, that the evidence of Richard's preexisting diabetes was not strictly relevant to prove any of the issues in the case, and yet it was scarcely possible to edit such evidence out of the background of the case. For example, Richard had been on medical leave for four or five months from his Ford Motor Company employment, and he was unable to return to his Ford Motor Company employment. Actually, it was the gas fumes aggravating the diabetic condition which prevented his return to the Ford Motor Company employment, a fact which the defendant emphasized in his cross-examination of Weisbach, showing the jury that Richard's failure to return to his Ford Motor Company employment was not the result of the accident-caused injuries. Where the subject under investigation is the effect upon one's person of injuries received in an automobile accident, that this involves a comparison of his condition before the accident and his condition after the accident. His diabetic condition was one of those peripheral circumstances which could be kept out of the case only by strained and artificial circuity. It is not clear that the evidence aided plaintiff more than defendant. In the absence of clear prejudice to the defendant, we will not hold the admission of this evidence an abuse of discretion on the part of the trial judge and therefore reversible error.

## IV

Defendant next claims, in two separate points, that the $7,500 award to Richard was excessive, and the $2,500 award to Valerie.

■ Her first point is that "The Award [of $7,500 to Richard] was Based on Speculation and Conjecture Regarding Plaintiff's Lost Wages Due to Plaintiff's Failure to Offer Proof of Lost Income to a Reasonable Certainty." Defendant cites two cases in support of his position. One is *Seymour v. House*, 305 S.W.2d 1 (Mo.1957). That case was before our present MAI system of jury instruction, and it was there held that lost earnings, because speculative, could not be specially submitted to the jury as an item of special damage.

In the case before us, the jury was given the "short, simple, and easily understood" MAI 4.01 Damages-Personal and Property. See Committee's Comments (1965 New), MAI Commentary at 49 (1981 3d ed.). Lost earnings were not specifically submitted as an item of special damage. The Committee's comments to MAI 4.01 suggest that the items of damage which may be properly considered by the jury is a matter for jury argument, and that the parties should thresh out with the court in chambers what items of damage are supported by the evidence and may properly be argued to the jury. MAI 4.01 commentary at 50 (1981 3d ed.).

The record does not indicate here that the defendant before or during the jury argument made any objection to plaintiff's argument with respect to lost earnings.

*Thienes v. Harlin Fruit Co.*, 499 S.W.2d 223 (Mo.App.1973), also cited by the defendant for her position, deals with the admissibility of evidence of speculative lost earnings, a question not involved in the present case.

We hold that there was no error in the damage instruction.

Next, defendant argues that the verdict of $7,500 for plaintiff Richard for his personal injuries was excessive, and also the $2,500 award to Valerie.

Richard was thrown through the windshield as a result of the collision. He received a cut on his chin and on his ear. His back began to hurt and the right side of his face. Dr. Dorman said that he suffered an injury to the ligaments, muscles and tendons of the neck and lumbosacral area. He suffered an acute cervical strain and an acute lumbar strain which Dr. Dorman treated by hot moist packs and manipulative therapy. Weisbach was instructed to refrain from heavy lifting or athletic events. At the time of Dr. Dorman's latest examination the day before the trial, Weisbach still had pain in the right side of the lumbosacral area, although the soreness in his neck had disappeared. Dr. Dorman said, "he's suffered a chronic lumbar strain," and felt that at the time of the trial he had "reached a plateau." "There is a good chance he may have suffered permanent injury to his low back," Dr. Dorman said. Asked whether that was his "feeling as to the probability," he answered in the affirmative. Dr. Dorman said that the injuries which Richard had received would disable him from the kind of employment he had earlier had at the Ford Motor Company. Dr. Dorman's charges for medical services to Richard were $600 at the time of the trial. Richard had other medical expenses which were not itemized.

Valerie, too, had received sprains and received acute cervical strain and acute lumbar strain, which resulted in headache and neck pain which Dr. Dorman had treated by manipulation. While there were still some effects of the injury, Dr. Dorman did not feel that it would be a permanent injury. His charges for services to Mrs. Weisbach were $140.

Defendant cites us to several cases, not distinguishing between cases where the trial court has granted a new trial on account of the excessiveness of verdict such as *Davis v. Perkins*, 512 S.W.2d 868, 870 (Mo.App. 1974); where the trial court has ordered remittitur, or, if plaintiff will not remit, a new trial, as in *Bertram v. Wunning*, 417 S.W.2d 120, 122 (Mo.App.1967); and cases where the appellate court has ordered a remittitur, such as *Morgan v. Thompson*, 325 S.W.2d 794, 800 (Mo.1959); *Hiken v. Wilson's Shoes, Inc.*, 317 S.W.2d 673, 679 (Mo.App.1958).

A point by point comparison with each such case would be an exercise in tedium, but we will mention the only case which defendant says considers injuries like those of the Weisbachs'. That is *Moore v. Glasgow*, 366 S.W.2d 475 (Mo.App.1963), where the trial court set aside a $3,700 verdict as excessive, and the appellate court affirmed the order granting a new trial. That is quite a different thing than the appellate court's granting a new trial on the ground of a verdict's excessiveness. We note, too, the injuries to the Weisbachs were more severe than those of the plaintiff in *Moore* —and finally we observe that 20 years of inflation have intervened between *Moore* and the present case.

We decline to reverse the judgment of the trial court on this point, who considered and denied defendant's claim of excessiveness of the verdict.

## V

On one point the defendant must be sustained. Defendant says there is no evidence that Richard suffered any loss of services on account of his wife's injuries. That is correct. There is no evidence in this record that Richard suffered any loss at all because of Valerie's injuries. It does not follow automatically from a wife's injuries that the spouse suffered a loss of services. *Hopkins v. Mobile & O.R. Co.*, 33 S.W.2d 1009 (Mo.App.1931). Richard attempts to argue that Valerie's testimony that her own sex life suffered as a result of the accident necessarily implies that Richard's did, too. Valerie's testimony on this, although very vague, may mean that her own sex life did suffer as a result following the accident, but it is by no means clear that it was because of her injuries. A more likely interpretation of her testimony is that it was

because of his injuries. The judgment awarding Richard Weisbach $750 on account of his wife's injuries is set aside.

The judgment is affirmed except with respect to the $750 verdict and judgment in Richard's behalf on Count II of his petition, which verdict and judgment is reversed. The case is remanded for entry of a new judgment in accordance herewith.

All concur.