In The Interest of: R.L.P., et al.,
Juveniles Under Seventeen (17)
Years of Age.

JUVENILE OFFICER FOR THE 11TH
JUDICIAL CIRCUIT,
Plaintiff-Respondent,

v.

C.C., Defendant-Appellant.

Nos. 45582–45586.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 12, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 13, 1983.

Jess L. Mueller, Troy, for defendant-appellant.

Raymond Grush, Juvenile Officer, St. Charles, for plaintiff-respondent.

DOWD, Judge.

Appeal from judgment and order terminating parental rights. § 211.447.2(2), RSMo 1978.

On November 9, 1981 the Juvenile Officer of St. Charles County filed separate petitions for termination of parental rights as to five minor children. Upon a motion to make more definite and certain by counsel for the natural mother, the Juvenile Officer filed amended petitions on December 2, 1981. Following hearings on the petitions January 18 and 19, 1982, the trial court ordered all parental rights terminated. Since only the natural mother has appealed, we will not address those parts of the petitions, order, or proceedings which pertained to termination of the father's rights. All five cases have been consolidated on appeal.

Each of the five amended petitions included a paragraph alleging the existence of conditions set out in Section 211.447.-2(2)(h)b, RSMo 1978. That paragraph in each petition stated that the juvenile had been under the court's jurisdiction for one year or longer immediately prior to the filing of the termination petition and that, continuously from May 1980 to the time of filing, appellant had "failed to cooperate with the Division of Family Services and rectify the conditions which formed the basis for this court assuming jurisdiction" of the child.

The juvenile court assumed jurisdiction of L.M.P. (born September 1964), J.P. (born July 1966), and D.M.P. (born September 1967) on June 16, 1971, pursuant to a petition alleging neglect under Section 211.031.-(1)(a) or (b), RSMo 1969. The court took jurisdiction of R.L.P. and M.L.P. (twins born March 1972) on November 9, 1972, pursuant to a petition alleging neglect under the same statute. The children remained in foster homes from those dates until the January 1982 hearing, except for approximately four months in 1977 when they returned to the natural mother's home.

Appellant's first two points contend there was insufficient evidence to terminate her parental rights to R.L.P., M.L.P., D.M.P., L.M.P., and J.P.

The following facts emerged at the termination hearing. In June 1979 Edward Conley, a social service worker with St. Charles County Division of Family Services, was assigned to work with these five children in foster care and with the natural mother. Appellant requested a visit with the children and saw all but D.M.P. on July 16, 1979. On September 11, 1979 she visited with the twins. Appellant cancelled a visit she had requested with the twins on October 31, 1979. She visited again with all but D.M.P. on December 21, 1979. There was no evidence that appellant had any contact whatsoever with the children between December 1979 and November 1981 when the termination petition was filed.

Conley and Oscar Escamilla, a social service worker with Lincoln County Division of Family Services, made repeated efforts to contact appellant and to develop with her a written service agreement for the court to approve. Such a court-approved plan would have aimed at aiding appellant to rectify the conditions that caused the court

to assume jurisdiction of the children. Conley tried unsuccessfully to reach her by telephone on three occasions in January 1980. In June and July 1980 he sent three letters, two of them by certified mail with receipts returned. Visits to appellant's home occurred in September 1980 by Escamilla and by both Conley and Escamilla on October 1, 1980. Appellant would not discuss a service plan without consulting her attorney. On October 3, 1980 she met Conley in his office but no agreement was reached. A few days later Conley arranged a meeting with appellant's attorney and on November 14, 1980 mailed him copies of service agreements for the children. The attorney did not respond, despite Conley's four attempts to contact him in December 1980 and January 1981. Conley and Escamilla went to appellant's home with a written plan on February 6, 1981; she expressed interest in visitation with the children but again refused to enter into any service agreement without her attorney's consent. On March 27, 1981 and July 10, 1981 appellant told Escamilla in his office that she wanted to visit the twins. Although Escamilla explained that she needed to contact Conley regarding visitation because St. Charles County had jurisdiction of the children, she did nothing further in that regard. Appellant also stated to Escamilla on July 10, 1981 that, while she did not want to work on developing a service agreement, she did want the children back.

Conley testified that during this period of time the Division of Family Services did not prevent appellant from contacting her children. It appears that she did not give presents or cards to the children for birthdays or Christmas, she did not write to them or ask to contact them by telephone, and she did not contribute toward their support.

According to testimony of the older children regarding the few months in 1977 when they returned to their natural mother's home, appellant had temper tantrums and was physically rough with the twins. She pulled their hair, struck them with her fists, forced food into their mouths, and once threw one of them across the kitchen table. D.M.P. testified that on several occasions appellant grabbed her by the hair and hit her head on a coffee table.

The basis for the court's original assumption of jurisdiction was neglect. Parental neglect is defined differently in Section 211.447.2(2)(b), RSMo 1978, depending upon whether the parent has custody of the child. When the child is in the legal or actual custody of others, neglect is the parent's failure to provide the child with "a continuing relationship, such as, but not limited to, communication or visitation, and, to the extent the parent is financially able, the failure to provide for the child's care." There is clear, cogent, and convincing evidence in this case of such a failure for almost two years prior to the filing of the termination petitions. Despite repeated diligent efforts, Division of Family Services personnel could never obtain appellant's agreement to or involvement in any plan aimed at helping with her problems and reuniting the family.

The primary concern of the juvenile court is the best interest of the children. *In the Interest of L.A.H.,* 622 S.W.2d 319, 322 (Mo.App.1981). Under the evidence we agree with the trial court's findings that appellant failed to maintain a continuing relationship with her children, that she had not even attempted to rectify the conditions that caused the court to assume jurisdiction of the children more than nine years earlier, and that terminating parental rights would be in the best interest of all five children. The evidence showed that their best interest would be disserved by removing them from their current surroundings to place them in their natural mother's home. *See In the Interest of M___ K___ P___,* 616 S.W.2d 72, 78 (Mo. App.1981). Sufficient evidence supported the trial court's termination of appellant's parental rights.

Appellant's third point, concerning the trial court's failure to direct a mistrial as requested, does not comply with Rule 84.-04(d), cites no authority, and preserves nothing for review.

Appellant's final point contends the trial court erred in granting the juvenile officer's motion for protective order to prevent appellant's discovery of service worker Edward Conley's personnel file. Rule 56.01(c) makes such an order discretionary with the trial court. Appellant has demonstrated no prejudice or abuse of discretion. Point denied.

The judgment is affirmed.

SNYDER, P.J., and GAERTNER, J., concur.