S. Wayne EVERETT and PENROSE, INC. *v.* CITY OF WYNNE, ARKANSAS; AIRPORT COMMISSION FOR WYNNE, ARKANSAS; and Norman BURNETTE

87-109                                    730 S.W.2d 212

Supreme Court of Arkansas
Opinion delivered June 1, 1987

*Everett & Whitlock*, by: *Robert J. Gladwin*, for appellants.

*Killough & Ford*, by: *Robert M. Ford* and *S. Kyle Hunter*, for appellees.

DARRELL HICKMAN, Justice. Wayne Everett, a crop duster pilot, sued the City of Wynne because it prevented him from operating his agricultural spraying business from the Wynne Municipal Airport. His main argument was that the airport's manager, Norman Burnette, was allowed to operate his crop-dusting business from the airport and denied others the same privilege and that this constituted a violation of the United States Constitution. The airport commission asked for a declaratory judgment of the rights under a lease with Burnette.

The chancellor upheld the lease agreement between the Wynne Airport Commission and Burnette and denied Everett any relief. On appeal Everett makes three arguments: (1) the grant to Burnette of the exclusive privilege of operating a crop-dusting business violates the Equal Protection Clause of the United States Constitution; (2) the exclusion of Everett from using the airport is not a valid exercise of the police powers; and (3) the agreement between the airport commission and Burnette is not a valid franchise agreement. We find no merit to these arguments and affirm the decree.

The facts are virtually undisputed. The airport commission signed a ten year contract with Burnette in 1979 as airport manager. Because the city and the commission could not afford to pay Burnette, he was granted the exclusive right to provide the usual airport services: gas, maintenance and repairs of aircraft,

parking spaces, taxi services, etc. He was given a lease of land 1,000 feet north and 1,000 feet south of the main entrance to use in connection with these services. He was also granted the right to operate his crop-dusting business from the airport. All of this was a part of the consideration which Burnette received in return for managing the airport without cost to the city and commission. The commission considered it a fair exchange.

According to the testimony, the airport commission would not allow other crop dusters to operate from the airport for reasons of safety, health and welfare. Such operations entail loading chemicals which can run off to nearby residential areas, increased noise pollution, and increased air traffic. Burnette testified that he located his business at the airport so that the runoff of chemicals would not be toward the city, and this runoff plan was approved by the Environmental Protection Agency.

On March 24, 1986, Everett landed his plane at the airport in order that his trucks could load his plane with chemicals; however, Burnette would not allow Everett to so use the airport because of his exclusive privilege agreement with the airport commission. The gate to the airport is normally locked to keep vehicles off the runway. Everett cut the lock to let his trucks come onto the airport property, loaded his plane, and used the airport in his spraying business. Everett then sought injunctive relief. The City of Wynne sought to prevent Everett from operating his business at the airport.

The Equal Protection Clause of the United States Constitution protects fundamental personal rights. In this case Everett concedes he has no right to operate his business from the municipal airport. He was not denied the right the public has to use the airport—only the privilege of setting up his business and operating it from the municipal airport. He could land, take off, and service his planes; he could not load chemicals and fertilizer. His argument is, "If Burnette can, why can't I?" The answer is because the city, in the use of its police power and its legislative power, decided that in the interest of economy, it would be best for the city to have an airport manager at no charge and in return, the manager would be allowed to operate his private business from the airport to the exclusion of other private businesses.

In the case of *City of New Orleans* v. *Dukes*, 427 U.S.

297 (1976), two street vendors were allowed to continue to operate their businesses in the French Quarter while others were prohibited. Without elaboration, there were economic reasons for the city's action. The court said:

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. (Citations omitted.) Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.

■ Everett does not deny that the City of Wynne and the airport commission can prohibit all crop dusters from operating from the airport in the exercise of its police power. He argues, however, that the city's action is arbitrary. It has allowed one operator to base his operations there and has made no effort to set standards regarding flights or safety.

The evidence did reflect that there are 13 crop duster operators in Cross County. The city did not want any other crop dusters using the strip for safety reasons and for the health and welfare of the residents of the city. In addition the city needed a good manager, and the grant was made to obtain Burnette at no cost to the city.

■ The argument that the city granted an illegal franchise must also fail. Everett has not cited any authority to support his argument. The case of *City of Daytona Beach* v. *Dygert*, 1 So. 170 (Fla. 1941), is cited by Everett in his equal protection argument as law in his favor. We will consider it under this franchise agreement argument. In that case the city granted an individual the exclusive right to operate an airport. In effect, it became a private airport. In this case the commission ran the airport for the city, and Burnette managed it for the commission. This did not

involve a franchise agreement but instead a lease. Neither the public nor Everett has been denied any fundamental right.

Affirmed.