The Honorable Russell Bennett State Representative 95 Lafayette 44 Lewisville, AR 71845
Dear Representative Bennett:
I am writing in response to your request for my opinion on the following questions:
 1. Do cities and towns have the authority to do work on private property?
2. Does their insurance cover them when doing such work?
 3. Can the town legally be in this kind of unfair competition with private sector businesses?
You indicate in your request that a constituent who is in the lawn-care business has complained that various municipalities are mowing privately owned empty lots for considerably less money than a private business would charge.
RESPONSE
The answer to your first question will turn on factual determinations I am neither equipped nor authorized to make. However, as a general matter, I believe the answer to your first question would be "no" if the towns were contracting with absentee landlords simply to avoid using the available statutory means to compel those landlords to maintain their properties. With respect to your second question, the scope of insurance coverage, if any, is purely a question of fact that I am neither equipped nor authorized to address. With respect to your third question, without regard to fairness, a city's activities are authorized if they reasonably serve a municipal end. The question of reasonableness can also only be answered by a finder of fact.
Question 1: Do cities and towns have the authority to do work onprivate property?
Answering this question will involve assembling and interpreting various facts — tasks this office is neither equipped nor authorized to undertake. For instance, you have not specified what sorts of "work" the municipalities perform, why they perform it and what consideration they receive in return. As discussed below, these facts could bear on the issue raised in your question. Moreover, your request appears to be prompted by a constituent's purely private business concerns. By statute, I am forbidden to engage in the private practice of law and am restricted to advising legislators, other officials and boards on matters of public concern. Accordingly, in this opinion, I can do no more than offer certain general principles of law that I feel might apply. Your constituent should consult private counsel to discuss the specific facts of his case.
In Burke v. Elmore, ___ Ark. ___, ___ S.W.3d ___, 2000 WL 424056, at 2
(April 20, 2000), the Arkansas Supreme Court offered the following regarding the general powers of municipalities:
 This court has often stated that municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or by the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). See also City of Ft. Smith v. O.K. Foods, Inc., 293 Ark. 379, 738 S.W.2d 96 (1987); City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. City of Little Rock v. Cash, supra. Recently, this court summarized what powers can be exercised by a municipality:
 Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
 Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827, 828 (1997).
The general powers of municipal corporations are set forth at A.C.A. §§14-42-307 and 14-54-101. Among these are any powers and privileges "incident to other corporations of like character or degree, not inconsistent with the provisions of this subtitle or the general laws of this state." A.C.A. § 14-54-101(7). In addition, A.C.A. § 14-55-102, popularly termed the "general welfare clause," City of Fort Smith v. VanZandt, 197 Ark. 91, 94, 122 S.W.2d 187 (1938), provides:
 Municipal corporation shall have the power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof.
The Supreme Court has held that municipalities have "wide discretion" in the exercise of these powers. Smith v. City of Arkadelphia, 336 Ark. 42,46, 948 S.W.2d 392 (1999). Subsection 14-42-307(a)(1) of the Code provides that "[e]ach municipality operating under a charter shall have the authority to exercise all powers relating to municipal affairs." Subsection 14-43-601(a)(1) defines "municipal affairs" to mean "all matters and affairs of government germane to, affecting, or concerning the municipality or its government," with the exception of various itemized "state affairs." Among the specified "state affairs" are "[m]atters coming within the police power of the state[,] including minimum public health, pollution, and safety standards." A.C.A. §14-43-601(a)(1)(J). However, even "state affairs" can be the subject of local legislation "if not in conflict with state law." A.C.A. §14-43-601(a)(2). In Phillips v. Town of Oak Grove, 333 Ark. 183, 191,968 S.W.2d 600 (1998), the Supreme Court held that an activity could be subject to regulation under the police power without first determining that it constitutes a nuisance.
Section 14-54-901 of the Code provides in pertinent part: "Incorporated towns and cities of the first and second class are empowered to order the owner of lots and other real property within their towns or cities to cut weeds . . . after the town or city has provided therefor by an ordinance to that effect." Subsection 14-54-903(a) further provides that if the owner does not comply in timely fashion after having been noticed, "then the town or city is authorized to do whatever is necessary to correct the condition and to charge the cost thereof to the owner of the lots or other real property." Subsection 14-54-903(b) creates a lien against the property in the amount of the costs incurred. Finally, A.C.A. § 14-44-904 provides that a city can either foreclose on its lien in chancery court or make its own appealable determination of the amount owed, which will be recorded and collected as delinquent taxes. You have not informed me whether any of the municipalities at issue have passed the ordinance referred to in A.C.A. § 14-54-901. If they have, the enforcement of the mowing provision would clearly be authorized and all remedies just discussed would be available.
However, the question remains whether the cities are further authorized to contract with the owners to have the cities directly maintain the lots. In my opinion, although this determination will ultimately turn on consideration of facts not before me, the cities will be hard pressed to justify maintaining private lots using public machinery and personnel even if they are adequately compensated for this service. Although municipal corporations are expressly authorized to enter into contracts, A.C.A. § 14-54-101(2), they can do so only subject to the condition that the contract relate to municipal affairs. A.C.A. § 14-42-307(a)(1). The strength of the required municipal interest is expressed in 64 C.J.S.Municipal Corporations § 897, at 97 (1999):
 [A] municipal corporation has inherent or incidental power to enter into contracts essential to its existence and indispensable to the execution of its objects and purposes; but it has no other contractual powers. . . .
As reflected in the above quoted pronouncement from Burke, the Arkansas Supreme Court states this proposition even more strongly, declaring that cities have "no inherent powers" whatsoever and can exercise only express powers, those incidental thereto and "those indispensable (not merely convenient)" to municipal purposes. 2000 WL 424056, at 2. Particularly given the existence of a statutory mechanism for enforcing lot maintenance, A.C.A. §§ 15-54-901 et seq., I seriously doubt that the maintenance of private lots pursuant to public contracts would qualify as "essential" or "indispensable" to the cities' operations. At most, private contracts would appear to be a mere "convenience" designed to accommodate absentee landlords and to spare cities the time and effort of pursuing their express statutory remedies. A contract based only on this municipal objective may well run afoul of the directive in Burke that "[p]owers assumed by a city merely for convenience do not qualify as indispensable or implied powers." 2000 WL 424056, at 4. Moreover, even acknowledging the "wide discretion" municipalities enjoy in legislating, my concerns are only reinforced by the admonition in Burke that "any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City." 2000 WL 4224056, at 2. Given the established rule that public equipment may not be used for private purposes, Needham v. Garner, 233 Ark. 1006, 350 S.W.2d 194
(1961), I believe a finder of fact could not help but doubt the practices described in your request.
Even assuming the contracts are based on an adequate public purpose — a determination that can only be made after considering the facts of each case — they must further be supported by adequate consideration. See
Ark. Ops. Att'y Gen. No. 99-408, 98-025 and 97-250; City of Ft. Smith v.Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); City of Harrison v. BooneCounty, 238 Ark. 113, 378 S.W.2d 665 (1964).[1] You indicate in your request that the cities provide the lot maintenance services at prices considerably below those that would be charged by private contractors. In my opinion, to the extent that the prices charged are below the actual cost of the services and equipment depreciation, the contracts violate Ark. Const. art. XII, § 5, which provides that "[n]o county, city, town or other municipal corporation shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual." If such is the case, the contracts might be challenged as illegal exactions under Ark. Const. art. XVI, § 13. Determining whether these constitutional provisions apply will also involve a detailed inquiry into the facts of each contract.
Question 2: Does their insurance cover them when doing such work?
Pursuant to A.C.A. § 21-9-301, municipal corporations are immune from liability and from suit for damages" except to the extent that they may be covered by insurance." Municipalities are empowered to self-insure pursuant to A.C.A. § 27-19-107. Section 23-79-210 of the Code authorizes a plaintiff to proceed directly against the insurer in an action seeking damages.
The scope of insurance coverage is purely a factual matter of contract that I am neither equipped nor authorized to address. Local counsel will need to review the range of insurance coverage, if any, in each instance before determining whether coverage applies.
Question 3: Can the town legally be in this kind of unfair competitionwith private sector business?
Irritating though this may be to your constituent, "fairness" will not be a consideration in determining whether the cities' activities are permissible. The courts have upheld numerous municipal actions in the face of fairness objections from particular citizens. For instance, in Everettv. City of Wynne, 292 Ark. 306, 308, 730 S.W.2d 212 (1987), the Supreme Court rejected in the following terms an equal-protection challenge to a city's allowing its airport manager an exclusive right to operate his private business from the airport:
 The Equal Protection Clause of the United States Constitution protects fundamental personal rights. In this case Everett concedes he has no right to operate his business from the municipal airport. He was not denied the right the public has to use the airport — only the privilege of setting up his business and operating it from the municipal airport. He could land, take off, and service his planes; he could not load chemicals and fertilizer. His argument is, "If Burnette can, why can't I?" The answer is because the city, in the use of its police power and its legislative power, decided that in the interest of economy, it would be best for the city to have an airport manager at no charge and in return, the manager would be allowed to operate his private business from the airport to the exclusion of other private businesses.
If a city can pursue municipal ends by thus according an individual a business advantage over competitors, it follows that the city itself can likewise undertake municipal activities that may have a negative impact on private businesses.
Your constituent appears to feel that the cities' activities have deprived him of a property interest in prospective business. The applicable standard in reviewing such activities is stated in Phillips v.Town of Oak Grove, 333 Ark. 183, 194, 968 S.W.2d 600 (1998): a city "may not deprive an individual of his right to conduct lawful business unless it can be shown that such deprivation is reasonably related to the State interests sought to be protected." In the present case, the cities are not even imposing any direct proscription on your constituent; rather, they are merely conducting activities that your constituent feels are reducing his business prospects. In my opinion, even if these activities could be characterized as a constitutional "deprivation," which I doubt, determining whether they are "reasonably related" to a municipal interest will involve asking the same questions addressed above: Do the activities serve a public purpose and are the services offered for adequate consideration? As previously noted, although I harbor strong doubts that the city-as-private-lawn-service advances any indispensable public end, finally determining as much will turn on reviewing the facts, as will determining the adequacy of consideration flowing back to the cities.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] Significantly, the Supreme Court has held that equipment depreciation alone renders any rental of public equipment to a private party an illegal exaction, regardless of whether the rental realizes a profit. Pogue v. Cooper, 284 Ark. 105, 106, 697 S.W.2d 207 (1984).