**In the Interest of B.L.E., a minor and J.W.B., a minor.**

**Mary A. ELMORE, Juvenile Officer, Plaintiff–Respondent,**

v.

**C.L.K. (Natural Mother), Defendant–Appellant.**

No. WD 39724.

Missouri Court of Appeals, Western District.

Aug. 9, 1988.

---

Max Von Erdsmannsdorff, Kansas City, for defendant-appellant.

Patricia Louise Hughes, Liberty, for plaintiff-respondent.

Before CLARK, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

In this consolidated case, the mother appeals from the termination of her rights as a parent to her daughter, B.L.E., born November 17, 1975, and her son, J.W.B., born May 13, 1980. The hearing from which this appeal is taken is pursuant to a remand for new trial ordered by this court in *B.L.E. v. Elmore*, 723 S.W.2d 917 (Mo.App. 1987). The court found, in the previous appeal, that the mother did not waive her right to an attorney and that proceeding to trial in a termination of parental rights case without a court appointed attorney or a waiver of counsel was reversible error.

B.L.E. and J.W.B. were both made wards of the Clay County Juvenile Court on February 17, 1983. At that time, the children were placed in foster care because of abuse and neglect that occurred prior to February, 1983.

On February 17, 1983, appellant signed and agreed to Statements of Parental Rights and Duties in regard to B.L.E. and J.W.B. The statements were approved by the court on the same date and the provisions were the same in regard to both children. The appellant was represented by an attorney at the hearing on February 17, 1983.

The statements provided, among other things:

1.) Appellant had the right, duty and obligation to visit the children at regular and reasonable intervals. That it was appellant's responsibility to contact the children's caseworker and arrange visits and to notify the caseworker if she was unable to keep set appointments and visits.

2.) Appellant was required to attend and complete an approved parenting course.

3.) Appellant was required to attend professional counseling and she was not to discontinue counseling without the consent of the counselor and Juvenile Officer.

4.) Appellant was required to demonstrate the ability to financially support the children.

5.) Appellant was required to demonstrate an ability to provide a stable environment for her children which was free of usage of illegal drugs and activities.

The appellant signed the statements and acknowledged that the rights and obligations contained in the statements had been explained to her. Appellant agreed to meet the requirements of the statements and to fulfill her rights and obligations to her children. The statements contained an acknowledgment by appellant that she understood that if she did not visit or support her children for a six month period, without good and justifiable cause, or that if she failed to comply with the terms of the plan, her parental rights could be terminated. The statements specifically advised the appellant that if she did not agree with any part of the plan that she had ten days to request a hearing regarding the Statements of Parental Rights and Duties. Appellant signed the statements, did not ask any questions, said she understood the statements and she was given a copy of the statements.

The original petitions to terminate parental rights as to B.L.E. and J.W.B., were filed in September, 1985. Appellant's parental rights were terminated on April 24, 1986, which decision was reversed on appeal and remanded for new trial as previously stated. *B.L.E. v. Elmore, Supra.* A new trial was conducted on the original petitions on June 16 and 17, 1987. At the conclusion of the trial, the court entered Findings and Judgments terminating appellant's parental rights as to B.L.E. and J.W.B. The cases were consolidated at trial and on appeal.

The allegations against appellant in the petitions to terminate her parental rights filed September 27, 1985, and upon which this matter was ultimately decided, provided in pertinent part the following:

1. That appellant neglected the children, without good cause, for a period in excess of six (6) months prior to the filing of the petition by failing to provide on a continuing basis, the care, guidance and control necessary for physical, mental, and educational well being of the children. The appellant's failure to provide for the children while in the custody of the Juvenile Office or the Division of Family Services consisted of inadequate communication or visitation and failure to provide for the children to the extent that appellant was financially able to provide therefor. Any efforts at communication and visitation were token efforts and superficial in nature. There had been an appropriate court approved plan presented to the appellant regarding her parental rights and duties and although duly notified thereof, the neglect mentioned in the petition continued.

2. That the children came under the jurisdiction of the Juvenile Court pursuant to the provision of paragraph 1, Subdivision (1) of Section 211.031, RSMo., and pursuant to an order of the court under Section 211.181, RSMo., and thereafter said children were under the jurisdiction of the court for a period in excess of one year and had not been in the custody of the natural parents for a period in excess of six months. That the children's natural parents failed on a continuing basis to rectify the conditions which formed the basis for the aforementioned jurisdiction and order, there was reasonable cause to believe that the natural parents would not, even if given more time, rectify those conditions on a continuing basis, and the Juvenile Office and the Division of Family Services had used reasonable, diligent, and continuing efforts to aid the natural mother to rectify the conditions, and provide on a continuing basis a proper home for the children.

The evidence presented at trial was that appellant was born on April 13, 1953, and was 34 years old at the time of the trial in June, 1987. Appellant admitted to having been married seven times although she was not married to the father of either of the children herein at the time of their birth. At the time of her daughter, B.L.E.'s birth, appellant was married to J.F., but designated R.C.E. as being the father on B.L.E.'s birth certificate. Appellant was also married to J.F. when J.W.B. was conceived, but she divorced J.F. during her pregnancy. At one point, appellant by affidavit declared R.D.D. to be the natural father of J.W.B. and later declared that R.B. was the natural father of J.W.B. The parental rights of J.F. were terminated in the previous hearing without appeal. Both R.D.D. and R.B., who as previously stated were alleged at different times to be the father of B.L.E., were deceased at the time of the trial in June of 1987.

Two days before the abuse and neglect hearing which was held on February 17, 1983, appellant married Bryce Kline, who was 17 years old at the time of the marriage. Appellant was almost 30 years old at the time of this marriage. Bryce Kline's parents had the marriage annulled on January 12, 1984, but appellant remarried Bryce Kline two months later.

Appellant testified that in her lifetime, she had lived in at least six different states. Appellant rarely, if ever, had a permanent or established address other than when she was in jail. She said she moved a lot of times. Appellant didn't remember where she lived in 1983, after custody of her children was taken from her. She wasn't sure where she lived in 1984, but she thought it was in Independence, Missouri.

After agreeing to the Statements of Parental Rights and Duties, appellant never gave an address to the Juvenile Officer supervising her case. Appellant often told her Juvenile Officer that she was living in her car. In April of 1983, she said that she could not disclose her address because she was hiding from the Division of Family Services due to some over-extension of A.F.D.C. benefits.

After the abuse and neglect hearing on February 17, 1983, when appellant lost custody of her children, she was in constant trouble. After the hearing she was arrested in Kansas on forgery charges. Appellant was also stopped by the police for peeking in the window at a foster home where her children had been placed. This incident caused the children to have to be moved to another foster home. Appellant also aided her oldest daughter, who is not involved in this case, in running away from a group home where the Juvenile Office had placed her.

Appellant plead guilty to felonious restraint on May 18, 1984. This charge arose out of an incident on October 8, 1983, where appellant took a child from Children's Mercy Hospital. Appellant was granted probation on the charge. Her probation was revoked in February of 1985, because appellant failed to report a change of address, failed to maintain employment, failed to obtain psychiatric counseling, was arrested for stealing over $150 and failed to report the arrest, and failed to abide by the directives of her probation officer. Ap-

pellant was then placed in the custody of the Department of Corrections. She was at the Renz Correctional Center in Jefferson City, Missouri, until March 10, 1985, when she was transferred to the Chillicothe Correctional Center. She was paroled from Chillicothe on December 21, 1985, at which time she was sent to a halfway house in Kansas City. She remained at the halfway house for approximately one month and was returned to the Jackson County Jail when a urine analysis tested positive for marijuana. Appellant was released from the Jackson County Jail on January 30, 1986, and was told to report to Renaissance West, a drug screening and counseling center. She failed to report to Renaissance West and absconded from supervision. She was arrested on March 6, 1986, and returned to Renz Correctional Center on April 1, 1986. On April 29, 1986, appellant was transferred back to the Chillicothe Correctional Center. On January 12, 1987, appellant was sent to the Fellowship House in Kansas City which is a drug treatment house. Appellant was scheduled for parole again on March 11, 1987, but on March 4, 1987, she was returned to the Chillicothe Correctional Center because of possession of marijuana and hash. Appellant was scheduled for a maximum release date from the custody of the Department of Corrections of March 11, 1988.

The applicable statute in this case is Section 211.447, RSMo., as amended in 1982. Section 211.447 was also amended in 1985, but Section 211.487.2 as amended in 1985 provides that "in any action for termination of parental rights pending prior to September 28, 1985, the law in effect at the filing of the petition for termination of parental rights shall govern the hearing on such petition and any appeal therefrom." The petition to terminate appellant's parental rights was filed September 27, 1985. Therefore, Section 211.447, RSMo., as amended in 1982 is applicable to these proceedings.[1]

## I. NEGLECT

■ Appellant argues that the Juvenile Office did not show that she neglected the children as set forth in Section 211.447.-2(2)(b), RSMo., 1982. Since the children were not in appellant's custody at the time the petition to terminate her parental rights was filed, the following elements must all be shown by clear, cogent and

1. The applicable provisions of 211.447, RSMo., 1982, are as follows:

2. The juvenile court may, upon a petition filed by the juvenile officer under this section, terminate the rights of parent to a child if it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist: . . .

(2) When it appears by clear, cogent and convincing evidence that one or more of the following conditions exist: . . .

(b) The parent has neglected, without good cause, the child for a period of six months prior to the filing of the petition. The term "neglected" as used here is the failure of a parent to provide, on a continuing basis, the care, guidance and control necessary for the physical, mental, and educational well being of a child; or the failure to provide a child who is in the legal or actual custody of others with a continuing relationship, such as, but not limited to, communication or visitation, and, to the extent the parent is financially able, the failure to provide for the child's care. In those circumstances where the child is not in the legal or actual custody of the parent, the person or agency having legal or actual custody of the child must show that an appropriate plan approved by the court has not been reasonably complied with by the parent or has been unsuccessful, and that the parents were notified of the court approved plan and had at least ten days in which to request a hearing on such plan. Token efforts by the parent shall not be sufficient to defeat a finding of neglect: . . .

(i) The child has come under the jurisdiction of the juvenile court pursuant to the provision of subdivision (1), paragraph (a), (b) or (c) of Section 211.031 and pursuant to an order of the court under Section 211.181, and thereafter: . . .

b. The custody of the child has not been with his parents for six months or longer, or the child has been under the jurisdiction of the court for one year or longer, immediately prior to the filing of the petition to terminate, and the parent has failed, on a continuing basis, to rectify the conditions which formed the basis of the petition filed under Section 211.031, and the order entered under Section 211.181, and there is reasonable cause to believe that the parent will not, even if given more time, rectify those conditions on a continuing basis, and that the juvenile officer, division of family services or other agency has used reasonable, diligent and continuing efforts to aid the parent to rectify the conditions and provide on a continuing basis a proper home for the child."

convincing evidence: (1) For a period of six months, the parent failed to provide the children a continuing relationship (for example: communication or visitation); (2) The parent has failed to provide for the child's care to the extent the parent is financially able; (3) An "appropriate plan" has been devised; (4) The court has approved the plan; (5) The parent has failed reasonably to comply or has been unsuccessful in complying with the plan; (6) The parent had at least ten days notice of the plan and a chance to request a hearing on it. Failure to prove any one or more of these elements would cause a case of neglect under Section 211.447.2(2)(b), RSMo., 1982, to fail. *In re S.P.W.*, 707 S.W.2d 814 (Mo.App.1986).

As shown by the following recitation of facts, and those previously stated herein, all six elements necessary to show that appellant neglected her children as required for termination of her parental rights under Section 211.447.2(2)(b), RSMo., 1982, were established by clear, cogent and convincing evidence.

(1) Appellant failed to provide her children a continuing relationship over a much longer period of time than the six months required by statute. During the entire period from 1983 through 1986, appellant never wrote her children when she wasn't in jail. On April 12, 1983, a visit was scheduled with the children on appellant's birthday. The Juvenile Officer picked up the children and arrived with presents for their mother only to have her not show up until 15 minutes after the visit was over. In 1984, appellant had only two visits with her children, one on January 6 and the other August 6. In 1985, appellant was in jail most of the time, but when she was out in February and March, she did not visit her children.

(2) Appellant failed to provide for her children's care to the extent that she was financially able to do so. Appellant exhibited absolutely no sense of obligation or commitment toward providing support for her children. With the exception of obtaining her G.E.D. while at Chillicothe Correctional Center, appellant refused all efforts to assist her in getting her life together in order that she could seek and obtain steady employment. Appellant would not avail herself of vocational rehabilitation and she persisted in violating the law such that she spent a great deal of her time in jail. Drugs were a major force in appellant's life. Appellant was able to obtain drugs but she did not demonstrate even the most minimal effort toward financially supporting her children.

(3) The plan devised for appellant, as set forth in pertinent part in the recitation of facts herein was appropriate. Appellant argues that she was upset when the plan was presented to her and that this somehow renders the plan inappropriate. Even if appellant was upset, a subject upon which there was ample contradictory evidence, such would not render the plan itself inappropriate. The terms of the plan were clear and realistic, took into consideration the best interest of appellant and her children, and if followed would have allowed appellant to regain custody of her children.

(4) The plan was approved by the court. Appellant argues that since the plan had not been signed by her before it was approved by the court that it does not meet the mandate of Section 211.447.2(2)(b), RSMo., 1982. Appellant cites *In Interest of D.L.D.*, 701 S.W.2d 152, 161 (Mo.App. 1985), in support of her position. That case does not require that a plan be signed before court approval and the statute likewise imposes no such requirement. *In Interest of D.L.D.* merely requires that the plan approved by the court be the same plan as that agreed to. Such a requirement as advocated by appellant does not exist under the law.

(5) Appellant failed reasonably to comply and has been unsuccessful in complying with the plan. A review of the facts as recited previously herein shows appellant's only efforts toward complying with the plan have been extremely minimal, superficial and token in nature calculated to serve only her interests and not those of her children. In addition to the facts already mentioned herein, appellant made no effort to attend and complete an approved parent-

ing course. A parenting class was scheduled for June 6, 1983, by the Juvenile Office, but appellant failed to attend and did nothing to reschedule. A parenting class was also scheduled for appellant at her home by the Division of Family Services in the summer of 1984, but appellant failed to stay at home to meet the Division of Family Services worker.

Appellant's Statement of Parental Rights and Duties also required that she attend professional counseling and not discontinue counseling without the consent of her counselor and the Juvenile Officer. Appellant did not attend counseling. Appellant was not willing to discuss counseling and said that she was too depressed to go to counseling.

(6) Appellant had at least ten days notice of the plan and a chance to request a hearing on it. Acknowledgment of the same was set forth specifically in the plan which appellant read, signed, said she understood, asked no questions about and was provided a copy.

On the issue of neglect alone, the appellant's parental rights were properly terminated, but because termination of a parent's rights to custody of a child is such a serious matter, appellant's other arguments will be addressed.

## II. FAILURE TO RECTIFY

■ Appellant next argues that there was insufficient evidence to show that she failed to rectify the conditions that formed the basis for the court assuming jurisdiction over her children in February, 1983, as required under Section 211.447.2(2)(b), RSMo., 1982.

To sustain the Juvenile Officer's petition because of failure to rectify prior conditions, there must be proof of the conditions that brought the child initially under the jurisdiction of the Juvenile Court. *R.L.L. v. Strait*, 633 S.W.2d 409 (Mo.App.1982). Appellant's argument that this was not done fails under the record herein.

The conditions that formed the basis for the court assuming jurisdiction in 1983 were established in the records of the Division of Family Services that were received in evidence over appellant's objection. Appellant argues the Division of Family Services records were hearsay and that they contained opinions lacking proper foundation. It is well established under the law that business records are admissible in evidence if: (1) the custodian or other qualified witness testifies to their identity and mode of their preparation; (2) they are made in the regular course of business at or near the time of the act, condition or event; and (3) in the opinion of the court, the sources of information, method and time of preparation are such as to justify their admission. Section 490.680, RSMo., 1986. A trial court has wide discretion in accepting records into evidence once the requirements of Section 490.680 are met. *State v. Jones*, 534 S.W.2d 556 (Mo.App. 1976). Appellant argues further that the records contained improper opinions and conclusions and double hearsay. However, at trial the appellant's objection was to the records as a whole and did not specify those parts that were improper or otherwise inadmissible. Such an objection directed to the entire business record is properly overruled when not specifically directed to the incompetent portion. *Happy v. Blanton*, 303 S.W.2d 633 (Mo.1957); *Ted Greer Const., Inc. v. LaSala*, 642 S.W.2d 379 (Mo.App.1982).

■ The Division of Family Services records contain several hundred pages of material evidence that spans a period of eleven years and shows a total of seventeen child abuse/neglect reports by November of 1982. The records establish that prior to the Juvenile Officer taking custody of her children, appellant led a nomadic lifestyle, was in and out of relationships with one man after another, failed to establish a secure home for her children, failed to see to the education and general development of her children, did not provide adequate financial, emotional or moral support for her children or work toward the same, abused drugs and neglected her children.

Appellant also argues that there was no evidence that she failed to rectify the conditions that caused her to lose custody of her

children in February of 1983. The facts as previously recited clearly show otherwise.

■ The final argument of appellant claiming that the Juvenile Office did not prove that she failed to rectify as required in Section 211.447.2(2)(b), RSMo., 1982, is that there was no evidence of the Juvenile Office, Division of Family Services or other agency having used reasonable, diligent and continuing efforts to aid appellant to rectify the conditions that caused her to lose custody. The record readily dispels appellant's argument. Appellant would not maintain contact with the Juvenile Office. She doesn't remember where she lived in 1983 or 1984, and she never gave her Juvenile Officer an address. She admitted to hiding from the Division of Family Services. She refused counseling and parenting courses and failed to keep appointments that were made for her. Appellant's argument on this point is without merit.

### III. EVIDENCE OUTSIDE SCOPE OF PLEADINGS

■ Appellant's next argument is that the trial court admitted evidence concerning her marijuana usage, number of marriages, and "other allegations" which were clearly outside the scope of the pleadings. The petitions allege among other things that appellant neglected her children by failing to provide on a continuing basis, the care, guidance, and control necessary for physical, mental, and educational well being of the children. Furthermore, the petitions allege that appellant failed to rectify the conditions that caused her to lose custody. Not only were appellant's marijuana usage and number of marriages relevant to show the prior conditions and failure to rectify but also to show appellant's failure to provide on a continuing basis, the care, guidance and control necessary for physical, mental, and educational well being of the children. This evidence clearly supported the allegations of the petitions.

Appellant's argument that "other allegations" were outside the scope of the pleadings does not state the rulings of the court sought to be reviewed and wherein and why they are claimed to be erroneous. This argument does not conform with the requirements of Rule 84.04(d) and presents nothing for review.

### IV. DUE PROCESS VIOLATION BY DENIAL OF VISITATION

■ Appellant's final argument is that her due process rights were violated by denial of requests to visit her children. It appears that appellant is seeking relief on this point for decisions that were made in regard to appellant not being permitted to visit her children in April or May of 1985, while she was incarcerated at the Chillicothe Correctional Center. Appellant cites no authority for her argument. Appellant is reminded that if a point advanced on appeal is not a matter of first impression and is not simply a matter of logic or policy or analysis of statutory or documentary language, the court on appeal need not search for precedential support to overrule the contention. If the point is one for which precedent is appropriate and available, it is the obligation of appellant to cite it if she expects to prevail. *Thummel v. King*, 570 S.W.2d 679 (Mo.1978). If appellant felt that she had a valid argument and that authority for her position was unavailable, she should have so advised.

Appellant's due process argument fails not only for her lack of authority but also because the juvenile court has intrinsic authority to facilitate the care, protection and discipline of a child within its jurisdiction. *In re R.M.*, 697 S.W.2d 205 (Mo.App.1985). There is nothing in the record to show that the decision not to permit appellant to visit her children while she was incarcerated was anything other than in the best interest of the children.

The termination of appellant's parental rights as to her children B.L.E. and J.W.B. is affirmed.